## ARGUED AND DETERMINED

IN THE

# SUPREME JUDICIAL COURT

OF

# MASSACHUSETTS.

COMMONWEALTH *vs.* CHARLES L. WILDER.

Worcester. Oct. 1; Nov. 4, 1878. — May 10, 1879.

A. conveyed by warranty deed to a town a parcel of land within the limits of the town and contiguous to a county road. The town bought the land for the purpose of using it in straightening and grading the road, and for obtaining the material to be used in the grading; but this purpose did not appear in the deed; and the purchase was not authorized by a vote of the town. The town constructed a road over the land, but did not legally lay out the road, nor was it so laid out by the county commissioners. *Held*, on an indictment, under the Gen. Sts. *c.* 161, § 82, against A. for cutting down a tree that stood on the land conveyed by him to the town, that his deed was not void; that the town became lawfully seised of the land; and that if A. cut down the tree wantonly and without cause the indictment could be maintained.

ENDICOTT, J. This is an indictment under the Gen. Sts. *c.* 161, § 82, for cutting down an elm tree standing on land of the inhabitants of Lancaster.

The principal question to be decided arises upon the following facts: In 1871, the defendant sold and conveyed to the inhabitants of Lancaster a parcel of land contiguous to a county road within the limits of that town. The parcel was bought by the inhabitants for the purpose of straightening, grading and relocating the road and for obtaining the material necessary to be used in the grading; though this purpose did not appear in the

VOL. XIII. 1

deed, which conveyed the fee in the usual form of a warranty deed. No vote was passed by the town of Lancaster authorizing the purchase of this land, but the facts reported would warrant the jury in finding that the town had ratified the purchase. A road was actually constructed over the parcel by the town, though the way was not legally laid out either by the county commissioners or the town. The road thus established was fenced as a way, and the defendant, who, we presume, owned the fee in the old way, now occupies for purposes of cultivation that portion which was thus practically discontinued.

The defendant asked the court to rule that the inhabitants of Lancaster had no right to buy land for the purpose of maintaining shade or ornamental trees upon it, or for laying out, straightening or relocating a highway or town way, or for the purpose of obtaining material for the repair of highways, and had no title to the tree in question. The court refused so to rule, but did rule that, if the jury found that the tree was upon the land conveyed in fee to the inhabitants of Lancaster for the purpose for which it was bought and used, and the tree was growing upon it as a shade tree or for ornament, and the defendant wantonly and without cause cut it down, then the indictment could be maintained. To this ruling the defendant excepted, and the jury found that he was guilty.

The defendant now contends that towns have no authority to purchase land for such purposes, and that the deed was void, and conveyed to the inhabitants no title whatever; and also that the indictment cannot be maintained under the Gen. Sts. *c.* 161, § 82, but should have been found under the Gen. Sts. *c.* 46, § 7, or the St. of 1867, *c.* 242.

The first question presented in the defendant's argument is, whether a town may purchase land for the purpose of constructing a highway or a town way over it, or for the purpose of obtaining material for the construction and repair of its highways.

It is provided in the Gen. Sts. *c.* 18, § 9, that towns may hold real estate for the public use of their inhabitants, and may convey the same by vote of their inhabitants, or by deed of their committee or agents; they may also hold personal estate for the use of their inhabitants, and dispose of the same. They may hold both real and personal estate in trust for the support of

schools and the promotion of education, and " may make contracts necessary and convenient for the exercise of their corporate powers; and may make such orders for the disposal and use of their corporate property as they may judge necessary or expedient for the interest of the inhabitants." This is the same provision contained in the Rev. Sts. *c.* 15, § 11, and is not to be found in any previous statute. The commissioners for the revision of the statutes of 1836, in their notes to this chapter, say that " this section is not intended to confer any new powers on towns; but only to state expressly certain powers which they have always been understood to possess, particularly in respect to conveyances of real estate; " this court having observed in *Damon* v. *Granby*, 2 Pick. 345, that it was questionable whether a town could contract by deed, as a vote of the town properly passed would convey land. See *Adams* v. *Frothingham*, 3 Mass. 352; *Codman* v. *Winslow*, 10 Mass. 146; *Springfield* v. *Miller*, 12 Mass. 415.

It may also be observed, that from the earliest time towns have been in the habit of holding and disposing of real estate. Under the colony ordinance of 1636, they were empowered to grant land within their limits for public uses, with power by vote to divide them among their inhabitants, subject to the paramount authority of the General Court, which reserved to itself and habitually exercised the power to grant lands so held by a town. 1 Mass. Col. Rec. 172. *Lynn* v. *Nahant*, 113 Mass. 433, 448. And in that case it was decided that land so held by Lynn passed to Nahant by its act of incorporation in 1853. It has also been decided in numerous cases that towns can properly take, hold and dispose of land under grants by the proprietors of common lands. *Gloucester* v. *Gaffney*, 8 Allen, 11. *Green* v. *Putnam*, 8 Cush. 21. See also *Emerson* v. *Wiley*, 10 Pick. 310. And towns may purchase and occupy land for the purpose of erecting market-houses and town-houses for the use of their inhabitants, and they may do this under the general powers conferred upon them, for the statutes give them no special authority to purchase and hold land for that purpose. *Stetson* v. *Kempton*, 13 Mass. 272. *Spaulding* v. *Lowell*, 23 Pick. 71. *French* v. *Quincy*, 3 Allen, 9. *Hadsell* v. *Hancock*, 3 Gray, 526. See also *Hardy* v. *Waltham*, 3 Met. 163; *Willard* v. *Newburyport*, 12 Pick. 227. There was no express provision empow-

ering towns to purchase lands for school-houses until the Gen. Sts. c. 38, § 37. But the St. of 1848, c. 237, authorized towns to take land for school-houses when the owner should refuse to sell the same, or should demand an unreasonable price therefor; clearly indicating that there was no question of the general power of a town to buy land for school-houses. Although towns are authorized to provide work-houses for the employment and support of paupers, no express authority is given to a town to purchase land for that purpose; Gen. Sts. c. 22; but it is distinctly implied that they have such power, for § 5 provides that several towns may unite in supporting an almshouse for their common use, and purchase land for that purpose. See St. 1788, c. 30.

It may therefore be assumed that towns in this Commonwealth may hold real estate by gift or purchase, whenever, in the exercise of their corporate powers, or in the performance of any duty imposed by law, it is necessary or expedient for the interest of their inhabitants to do so. And it was said by Chief Justice Parker, in *Worcester* v. *Eaton*, 13 Mass. 371, 378, " with respect to the capacity of the demandants," the town of Worcester, " to take by purchase and to hold real estate, we cannot deny to towns such right; since, by immemorial usage of the country, it appears to have been an incident to their corporate powers;" and, after alluding to the colonial acts respecting lands owned by towns in this corporate capacity, he added, " and it is well known that many towns, at this day, are the owners of real estate, which they hold in their corporate capacity, other than such as may be necessary to erect school-houses and other public buildings upon."

We have thus stated in general terms the powers of towns to take and hold real estate, as they are declared in the statutes and expounded in the decisions of the court, for the purpose of showing that towns may in all cases, where it is necessary and convenient for the proper execution of their powers, hold real estate. There is no provision in the statutes, forbidding towns to hold real estate for any particular purposes, or to purchase and hold it for highways or town ways, or for obtaining material for their repair. Whether a town, instead of paying the owner of land, over which a way is laid out, the damages, as provided in the Gen. Sts. c. 43, may purchase the land and take a deed from

h owner; and whether it may buy land for a gravel pit, instead of taking it and paving damages therefor, as provided in the St. of 1869, c. 237 · and whether such contracts are necessary and convenient for the exercise of their corporate powers and expedient for the interest of their inhabitants, so that money can be raised by taxation to pay for lands so purchased; are questions that have not yet been expressly decided by this court.

But these questions, as stated and as argued at the bar, are not necessarily involved in the decision of this case, and we are not called upon to consider them, except so far as to determine whether the deed of the defendant to the town was absolutely void. If it was, the defendant cannot be convicted of cutting down his own tree. If not void, then the town, having the capacity to take and hold land by purchase, became lawfully seised of the premises on the delivery of the deed, and may hold them, and they may be properly described as the land of the town, and not of the defendant. Until the deed is avoided by the grantor or otherwise, the land remains the property of the town ; and the questions whether the town exceeded its powers in taking the conveyance, and, if so, what consequences would ensue, are to be determined in other forms of proceeding, wherein the town may be a party.

We are of opinion that this was decided in *Worcester* v. *Eaton, ubi supra*, where it was held that a gift or devise to a town in its corporate capacity was not void ; and although the court did not determine that the acceptance of a deed by the officers of a town, the consideration of which would impose a tax on the inhabitants, created a contract which the town was authorized to make, or that the grantor might not avoid such a deed, yet it was determined that, the deed not having been avoided by the grantor, the town could maintain an action, upon its own seisin under the deed, for the recovery of the land from third parties claiming under a conveyance from the same grantor. The deed under which the demandant claimed was from Betsy Flagg, who was lawfully seised in Worcester of an estate in freehold for her life. The consideration named therein was five dollars, and also that the inhabitants of Worcester would provide for her comfortable support and maintenance during her natural life, or while she remained sole and unmarried. Whether the town of Wor-

cester, having the duty imposed on it by law of supporting Betsy Flagg, if she should be in need of relief as a pauper, could enter into such a contract for her support, was considered immaterial, for the town having the capacity to take by purchase and hold real estate, "the demandants," to use the language of the court, "became lawfully seised on the delivery of the deed to them by Betsy Flagg; and will remain so until the estate expires or is transferred by them, or is reserved by the grantor in consequence of her choosing to avoid this deed." If an action could be maintained by the town upon the seisin derived from such a deed, certainly the land conveyed to the town of Lancaster by the deed of the defendant, upon which the defendant cut down the tree, may be properly described as land of the town of Lancaster; for it is lawfully seised of the land, although it may have exceeded its legitimate authority in purchasing it, upon which point we express no opinion. The defendant in this case does not stand in any better position from the fact that he made the deed; he has parted with his title to the town, which is not a party to these proceedings; and, even if he may avoid the deed, until he does so the title remains in the town, and may be conveyed by it to third parties.

It may also be questioned whether, even if the town has exceeded its authority, the plaintiff can have the title restored to him without paying back the consideration he has received; for it was held in *Frost* v. *Belmont*, 6 Allen, 152, that the town might recover money unlawfully paid out by itself or its agents from those who received it.

It has been held in other states that, if a municipal corporation exceeds its power in the purchase of lands, the courts cannot inquire into the question in a collateral way, or at the instance of an individual, but it can only be done at the instance of the state; the question has not arisen in Massachusetts in regard to the power of municipal corporations. In *Chambers* v. *St. Louis*, 29 Misso. 543, it was decided that whether a municipal corporation, authorized to purchase and hold real estate for certain purposes, transcends the exact limits of its power, and acquires land which it is not authorized to hold for any of the purposes of the corporation, can only be raised and determined in a proceeding instituted at the instance

of the state. In *Goundie* v. *Northampton Water Co.* 7 Penn. St. 233, it was held that the Commonwealth alone can object to a want of capacity in a corporation. See also *Heard* v. *Talbot*, 7 Gray, 113; *People* v. *Mauran*, 5 Denio, 389; Dillon Mun. Corp. (2d ed.) § 444, and cases cited.

It appears that no legal highway or town way was ever laid out over the land in question, and the defendant could not therefore be indicted for cutting down a tree under the Gen. Sts. *c.* 46, § 7, as amended by the St. of 1867, *c.* 242. And as the tree did not stand on land of the defendant, but on land belonging to the town of Lancaster, he could be indicted under the Gen. Sts. *c.* 161, § 82, if he cut it down wantonly and without cause.

*Exceptions overruled.*

*H. C. Hartwell & E. P. Loring*, for the defendant.

*C. R. Train*, Attorney General, for the Commonwealth.