. CHARLES E. MALLETT v. CLIFFORD SIMPSON.

*Corporations—Charters—Power to Convey Land—Ultra Vires—*
*Statute of Limitations.*

1. Where the charter of a corporation authorizes it to purchase land for some specified purpose, in the absence of evidence, it will be presumed that any land purchased by it, was acquired for the purposes authorized by the charter.

2. Where the charter of a railroad company authorized it to purchase land for the purpose of procuring stone and other material necessary for the construction of the road, or for effecting transportation thereon ; *It was held*, that the charter authorized the purchase of land for the purpose of getting cross-ties and fire wood.

3. At common law, in the absence of any provision in the charter, a corporation has the power to acquire and hold real estate in fee. The statutes of mort- main have never been adopted in this State.

4. Even if a corporation is forbidden by its charter to hold or take a title to real estate, a conveyance of land to it is not void. It is valid until vacated by a direct proceeding by the sovereign, instituted for that purpose.

5. A break of two or three years in the chain of possession for thirty years, necessary to show title out of the State, is immaterial.

(*Cowles* v. *Hall*, 90 N. C., 330 ; *Reed* v. *Barnhart*, 10 Ired., 516, cited and approved).

CIVIL ACTION to recover the possession of land, tried before *Shipp, Judge,* and a jury, at February Special Term, 1885, of CRAVEN Superior Court.

The plaintiff introduced the following deeds in support of his title :

(1). A deed from Owen Chestnut to Elijah Hardison, executed in 1842.

(2). A deed from Elijah Hardison to the Atlantic and North Carolina Railroad Company, executed in 1856.

(3). A deed from said company to George A. Davey, executed in 1881.

(4). A deed from said Davey to plaintiff, executed in 1881.

It was in evidence that the defendant took possession of the land in controversy some three or four months before the action was begun, and has continued to hold possession ever since, and that the plaintiff's deeds covered the same.

It was also in evidence that Owen Chestnut was in possession of the land in 1833, and continued to live on it until he sold to Elijah Hardison in 1842; that said Hardison was in possession of the land from 1842 to 1856; that he had a hog-pen on the land, situated on the line of his land, that ran through the field of the defendant, which was alleged to be on the land of the plaintiff, and is the subject of this action. It was also in evidence that the railroad company was in possession of the premises, and from 1856 to the time when the plaintiff went into possession in 1881, frequently cut wood and cross-ties on parts of it, and that the plaintiff was in possession of the land from the time of his purchase until the defendant took possession.

The defendant introduced no evidence, except the charter of the Atlantic and North Carolina Railroad Company, with specific reference to §23, and it was admitted by the plaintiff that the land in controversy was a part of an ordinary plantation, and the evidence was, that the railroad ran through it, but not over the *locus in quo*, and that it was used for no other purpose by the company, than for the purpose of wood for fuel and cross-ties.

Defendant's counsel contended that the railroad company was incapable of taking or making title to the land, and that the

title was in the heirs of Elijah Hardison, he being dead. His Honor ruled against the defendant and he excepted.

His Honor instructed the jury, that as it was in evidence "that Chestnut was in possession of the land in 1836, and afterwards until the sale to Hardison, and by reason of other testimony that possession in favor of plaintiff and those under whom he claimed, would begin to run from 1833, without color, in making out his title by thirty years possession; and a break of two or three years in the chain of continuous possession for thirty years would make no difference.

The jury returned a verdict in favor of the plaintiff and there was judgment accordingly, from which the defendant appealed.

*Mr. C. M. Busbee*, for the plaintiff.
*Mr. Jno. Devereux, Jr.*, for the defendant.

ASHE, J., (after stating the facts). The only exception taken by the defendant on the trial, was to his Honor's ruling adversely to his contention, that under the 23d section of the Act of Incorporation (Laws of 1852, ch. 136), the railroad company was incapable of taking or making title to the land, and that the estate was in the heirs of Elijah Hardison, who was dead.

The section of the act relied upon by the defendant as the ground of his exception, is as follows: "That the said company may purchase, have, and hold in fee for a term of years, any lands, tenements or hereditaments which may be necessary for said road or the appurtenances therefor, or for the erection of depositories, store-houses, houses for the officers, servants or agents for the company, or for workshops or foundries to be used for said company, or for procuring stone or other materials necessary to the construction of the road, or for effecting transportation thereon, and for no other purpose whatever." But, in connection with this section, in ascertaining the powers conferred by the charter of the company, the fifth section of the act should

be considered, in which it is declared that the company "shall be capable, in law and equity, of purchasing, holding, selling, leasing and conveying estates, real, personal and mixed, acquiring the same, by gift or devise, so far as shall be necessary for the purpose embraced within the scope, object and intent of this charter, and no further." By the charter, the corporation is empowered to purchase, hold and sell real property, for the purpose of "*procuring stone or other material necessary to the construction of the road, or for effecting transportation thereon.*" In the absence of any evidence with respect to the use made of the land after its purchase by the company, it is to be presumed that the land purchased was acquired for the purpose authorized by the charter. The deed to the company covered the fee, and the company had the right to sell and convey the same. This principle is announced in the case of *Yates* v. *Van De Bogert*, 56 N. Y., 526, in which it is held, that "where a railroad company is authorized by its charter to acquire by purchase such real estate as may be necessary for the construction of its road, it will be presumed that lands deeded to it, are acquired for that purpose. By a deed purporting to convey a fee, it acquires title in fee, and when the land is no longer used for its purpose, it has the right to sell and convey the same."

But it is not necessary that the plaintiff should resort to such a presumption in this case in support of his title from the Railroad Company. For it was in evidence that the company bought the land in question in 1856, and held it for twenty-five years; that its road ran over the land, and that it was used by the company for the purpose of getting *wood for fuel and cross-ties.* These were *materials,* certainly essential to the purpose for which the company was chartered.

The cross-ties were *necessary to the construction of the road,* and its repairs, and the fuel was equally necessary, after the road was constructed, in *effecting transportation,* so that the purchase of the land by the company, was strictly within the power conferred by the charter, and having used it for the purpose for

which it was purchased, it had the right, under the fifth section of the act, to sell it when it was no longer needed for that purpose.

But there is another view of the subject which is fatal to the contention of the defendant.    Conceding that the Railroad Company had not purchased the land in question, nor used it for the purpose contemplated by the charter, the deed from Hardison to it vested the legal title, and its right to purchase and hold the land could not be collaterally assailed. ' No one but the State could take advantage of the defect that the purchase was *ultra vires.*    This principle is fully sustained by the authorities.    Like an alien who is forbidden by the local law to acquire real estate, he may take and hold title until "office found." *Fairfax Devisees* v. *Hunter's lessees*, 7 Cranch, 604.

At common law, corporations generally have the legal capacity to take a title in fee to real property.    They were prohibited in England by the statutes of mortmain, but these statutes have never been adopted in this State, so that the common law right to take an estate in fee, incident to a corporation, (at common law), is unlimited, except by its charter and by statute.    But the authorities go to the extent, that even when the right to acquire real property is limited by the charter, and the corporation transcends its power in that respect, and for that reason is incompetent to take title to real estate, a conveyance to it is not void, but only the Sovereign, (here the State), can object.    It is valid until assailed in a direct proceeding instituted by the Sovereign for that purpose.    *Leazern* v. *Hilegas*, 7 Sargt., 313; *Gonndie* v. *Northamton Water Co.*, 7 Pa. St., 233; *National Bank* v. *Whiting*, 103 U. S., 99; Angel & Ames on Corporations, §§152–777; *Runyon* v. *Coster*, 14 Pet., 122; *The Bank* v. *Poiteaux*, 3 Rand (Va.), 136.

The case of *Leazern* v. *Hilegas, supra,* was very similar to the one before us, in the facts and the questions of law involved. The plaintiff there claimed the land through the Bank of North America, by deeds of conveyance to and from said Bank.    The

Bank was restricted by its charter from purchasing land except for certain purposes, which it had transcended, and the defendant contended that the Bank was incapable of purchasing and alienating the land. But the Court held, "the Bank might take independent of a provision in the act of incorporation, and that the title of the corporation, like that of an alien, would be defeasible only by the State. No one can take advantage of the defect (of title) but the State."

In Illinois it was held, that " when a corporation was authorized by its charter to purchase real estate for certain purposes, but for no other, a deed executed to it, by one having capacity to convey, vested the title in the corporation, and that such title could be assailed on the ground that the purchase was *ultra vires*, only by the State, or by a stockholder, but not by the grantee." *Hough* v. *Cook County Land Company*, 73 Ill., 23.

The deduction from the authorities is, that if the corporation acquired the land for any of the purposes authorized by the charter, its purchase and sale was valid ; and if on the other hand, it transcends the authority conferred by the charter, its purchase and sale would still be valid against every body except the State, and its title could not be collaterally assailed, as was attempted in this case.

The only other exception taken by the appellant, was to that part of his Honor's charge, in which he held, that "a break of two or three years in the chain of continuous possession for thirty years would make no difference." We are unable to see from the record, what fact in the evidence called for the remark, for the possession, beginning in 1833, seems to have been continuous for more than thirty years; but if there had been such a break in the continuity of the possession, there would have been no error in the instruction, for it is settled by the decisions of this Court in several cases. The decision in *Cowles* v. *Hall*, 90 N. C., 330, is in strict conformity with the instruction given by his Honor, and that case was decided upon the authority of *Reed* v. *Earnhart*, 10 Ired., 516, instead of which, through some inad-

vertence, the case of *Candler* v. *Lunsford*, 4 Dev. & Bat., 407, was cited, which applied to a different principle.

There is no error. The judgment of the Superior Court is affirmed.

No error. Affirmed.