*A. A. Wyman,* for the tenants.

*H. Parker,* for the demandant.

---

BENJAMIN W. HUBBARD & others *vs.* WORCESTER ART MUSEUM.

Suffolk.   January 17, 18, 1907. — February 27, 1907.

Present: KNOWLTON, C. J., MORTON, LORING, BRALEY, & SHELDON, JJ.

*Charity.   Corporation.   Will.   Worcester Art Museum.*

Under R. L. c. 125, § 8, by the terms of which a corporation organized for a charitable purpose " may hold real and personal estate to an amount not exceeding one million five hundred thousand dollars," a gift made by will to such a corporation in excess of that amount is good against every one but the Commonwealth, and if, after the will is proved, the Legislature passes a special statute authorizing the corporation to hold real and personal property to an amount exceeding that of its property when increased by the gift, this operates as a waiver of the right of the Commonwealth to terminate the holding, and as a legislative declaration of the validity of the gift.

The Worcester Art Museum was organized under Pub. Sts. c. 115, " for the purpose of founding an institution for the promotion of art and art education in said Worcester ; erecting and maintaining buildings for the preservation and exhibition of works and objects of art ; making and exhibiting collections of such works, and providing instruction in the industrial, liberal and fine arts ; for holding real and personal estate in the furtherance of this purpose ; and for the holding and administering funds acquired by the corporation for these and kindred objects in accordance with the will of the donors. All of said property and funds of the corporation, however, are to be held solely in trust for the benefit of all the people of the city of Worcester." A gift was made by will to this corporation exceeding the amount of $1,500,000 which it was allowed to hold under R. L. c. 125, § 8. After the will was proved St. 1906, c. 312, was enacted authorizing the corporation to hold real and personal property to an amount not exceeding $5,000,000, which was more than the amount of its property as it would be when increased by the gift. The heirs of the testator brought a petition under R. L. c. 192, § 6, for leave to file an information in the

nature of a *quo warranto* against the corporation to set aside the gift. *Held*, that, assuming that the remedy sought was the proper one if the right claimed existed, which was not passed upon, and assuming also that St. 1906, c. 312, did not make the corporation's title good against all the world, which the court held that it did, the gift was one to a public charity and would not be allowed to fail through the incapacity of the donee to hold the property, and, if such incapacity existed, the court by applying the doctrine of *cy pres* would appoint a trustee to carry out the charitable intent of the testator, so that in any view of the case the petitioners had no "private right or interest" which had been injured by the corporation to bring them within the provisions of R. L. c. 192, § 6.

KNOWLTON, C. J.    This is a petition brought by the heirs of Stephen Salisbury, late of Worcester, deceased, for leave to file an information in the nature of a *quo warranto* against the respondent, under the R. L. c. 192, §§ 6–13. The Worcester Art Museum is a corporation, established under the provisions of the Pub. Sts. c. 115 (R. L. c. 125), "for the purpose," as set forth in its certificate of incorporation, "of founding an institution for the promotion of art and art education in said Worcester; erecting and maintaining buildings for the preservation and exhibition of works and objects of art; making and exhibiting collections of such works, and providing instruction in the industrial, liberal and fine arts; for holding real and personal estate in the furtherance of this purpose; and for the holding and administering funds acquired by the corporation for these and kindred objects in accordance with the will of the donors. All of said property and funds of the corporation, however, are to be held solely in trust for the benefit of all the people of the city of Worcester." By the will of Mr. Salisbury this corporation is made his residuary legatee, and if the intention of the testator is carried out, it will receive, under the will, real and personal estate amounting in value to between $2,000,000 and $3,500,000. By the R. L. c. 125, § 8, such corporations are authorized to "hold real and personal estate to an amount not exceeding one million five hundred thousand dollars." By the St. 1906, c. 312, enacted after the probate of the will, the right of this respondent to hold real and personal estate was enlarged to an amount not exceeding $5,000,000. The petitioners contend that, by reason of the limitation in the statute, the gift was void; that, as heirs at law of the testator, their rights in this part of his estate became vested on the probate of the will; that the St. 1906 is prospective in its operation, and

does not affect the right of the respondent to hold property under this will, and that, if it were construed as applying to property devised by this will, it would be unconstitutional and void.

The statute under which the petition is brought has been considered in *Goddard* v. *Smithett,* 3 Gray, 116, in *Hartnett* v. *Plumbers' Supply Association,* 169 Mass. 229, and in other cases. We will assume in favor of the petitioners, without deciding, that if they were right in their view of the questions of substantive law involved, it would be available to give them the remedy which they seek. We come directly to the effect of the residuary clause in the will.

The attack upon its validity may be considered from two points of view: first, in reference to the rights of testators, as against their heirs, to dispose of their property for charitable or other purposes; secondly, in reference to the provisions of the law giving this kind of corporations a right to hold property to an amount not exceeding a certain sum.

From the first point of view this gift is perfect and complete. Except for the protection of the statutory rights of a husband or wife, the power of a testator in this Commonwealth to dispose of his estate by a will is unlimited. There is nothing in our law to restrain one from giving free course to his charitable inclinations, up to the last moment of his possession of a sound, disposing mind. Making charitable gifts in this Commonwealth is not against public policy, and we have no legislation, such as has long existed in England and in New York and some of the other American States, putting obstacles in the way of such testamentary acts. The only ground of objection to this part of the will is not from the point of view of the testator or of his heirs, but on account of the provision of the statute regulating the rights of corporations as to the holding of property. We must, therefore, determine the meaning and effect of this statute on which the petitioners rely.

They contend that it is by implication an absolute prohibition against the holding, at any time, in any form, for any purpose, of a greater amount of property than that stated, and that any attempt of a corporation to hold more, or of any person to put more into the ownership of a corporation, is illegal and absolutely void. The respondent contends that this implied limita-

tion of the right to hold is made on grounds of public policy; that it is a provision only in favor of the State, which the State may enforce or not, as it chooses; that grants or devises in excess of the amounts stated are not void, but only voidable; that third persons cannot question the validity of such grants or devises, but that they are legal so long as the State leaves them undisturbed, and that the State may at any time, by a legislative act or in some other proper way, completely waive its right of enforcement.

In interpreting the act the history of earlier kindred provisions may be helpful. At common law, corporations were authorized to acquire and hold both real and personal property without limit. *In re McGraw's estate,* 111 N. Y. 66, 84. "The creation of a corporation, gives to it, amongst other powers, as incident to its existence and without any express grant of such powers, that of buying and selling." *Bank* v. *Poitiaux,* 3 Rand. 136. "A corporation has, from its nature, a right to purchase lands, though the charter contains no license to that purpose." *Leazure* v. *Hillegas,* 7 S. & R. 313. See also *Page* v. *Heineberg,* 40 Vt. 81; *Mallett* v. *Simpson,* 94 N. C. 37, 41.

Under the feudal system, when land was given to a corporation, the chief lords of whom the land was held, and the king as ultimate chief lord, lost their chances of escheat, and various other rights and incidents of military tenure. During the middle ages, the accumulation of land in the ecclesiastical corporations was so great as to be thought a national grievance. Hence the English mortmain acts, which go back for their origin to Magna Charta, St. 9 Hen. III. c. 36, and which have continued with various modifications to this day. See 7 Edw. I. c. 2; 15 Rich. II. c. 5; Shelford on Mortmain, 2, 6, 8, 16, 25, 34, 39, 809, 812; Tyssen on Charitable Bequests, 2, 383. Under these acts the alienations were not void, so as to let in the grantors and their heirs; but they merely operated as a forfeiture which gave a right to the mesne lord and the king to enter after due inquest. This right to enter was often waived by a license in mortmain. See citations above, and Tyssen on Charitable Bequests, 383; St. 7 & 8 Will. III. c. 37. In form these licenses commonly authorized a holding of property "not exceeding" a certain value.

In later years this authority sometimes has been inserted in the charter, and this limited power of purchase has, it is said, been exceeded by almost all corporations.    Shelford on Mortmain, 55.    See also pages 10, 44, 49, 56, 891; Tyssen on Charitable Bequests, 393, 394, 396.

Another act, St. 9 Geo. II. c. 36, which is usually called " The Mortmain Act" but is called by Tyssen the "Georgian Mortmain Act," is of a very different nature.    One of its purposes, as declared in the preamble, is to avoid "improvident alienations or dispositions made by languishing or dying persons, or by other persons, to uses called charitable uses, to take place after their deaths, to the disherison of their lawful heirs." Considered in reference to its purposes, it is not properly called a mortmain act.    It applies only to gifts for charitable uses; and under it all such gifts, unless made as the statute allows, are absolutely void.

We never have had any real mortmain acts in Massachusetts. The nearest approach to one was the Prov. St. 1754–5, c. 12; 3 Prov. Laws (State ed.) 778.    This made deacons a corporation to take gifts for charitable purposes, limited the grants to such as would produce an income not exceeding three hundred pounds a year, and provided that they should be made by deed, three months before death, and that all bequests, devises or later grants should be void.    This statute related only to gifts to deacons, and was repealed by St. 1785, c. 51 (February 20, 1786), which re-enacted a part of the law, but omitted the provision that gifts not authorized by the act should be void.    *Bartlet* v. *King*, 12 Mass. 537, 545. See R. L. c. 37, § 1.

The significance of this reference to English law and to our legislation is, first, that, except for this short period, we have never had in Massachusetts any legislation prohibiting charitable gifts to trustees or corporations, or providing that any kind of conveyances, devises or bequests to corporations shall be void. On the other hand, the policy of the Commonwealth, as expressed both by legislation and the decisions of its courts, has been exceedingly liberal to testators and public charities.    *Sanderson* v. *White*, 18 Pick. 328, 333, 334.    *American Academy* v. *Harvard College*, 12 Gray, 582, 595, 596.    *Saltonstall* v. *Sanders*, 11 Allen, 446.    *Jackson* v. *Phillips*, 14 Allen, 539, 550.

Secondly, the implied limitations upon the power of corporations to hold property, which appear in numerous enactments, have been made, not in the interest of grantors or devisors or their heirs, but in the interest of the State, on considerations of public policy.   The general form of these limitations, which appears in the statute before us, and with slight variations in special charters, (a list of which, two hundred and seventy-four in number, granted in this State before 1850, has been furnished us through the industry of counsel,) corresponds with the form of licenses granted by the Crown in England under the old mortmain acts, and sometimes embodied in charters granted by Parliament. Under these English acts, grants or devises to a corporation to hold property without a license, or in excess of the amount licensed, were not void, but only voidable by the mesne lord or the king, upon entry, after inquest according to law.   In view of the close relations between Massachusetts and the mother country in early times, this justifies an argument, of considerable strength, that the implied limitations in our statutes were intended to have no greater force than the old mortmain acts of England, as distinguished from the Georgian mortmain act.

We start with the inherent right, already referred to, of every corporation to take and hold property at common law, by virtue of the act of its creation.   This right is recognized in our statutes by implication, without express mention.   R. L. c. 109, §§ 4–6.   What force is to be given to the words, " may hold real and personal estate to an amount not exceeding one million five hundred thousand dollars " ?   The respondent contends that their meaning is as if words were added as follows : " and beyond that amount it shall have no right as against the Commonwealth ; and the Commonwealth may take proper measures, through action of the Attorney General or otherwise, to prevent or terminate such larger holding."   According to the argument, a taking and holding by a corporation, above the prescribed amount, is under its inherent right.   As between it and the State as the guardian of the public interest, a provision as to amount is made, which does not affect its right as to third persons.   As to the general legality of the holding, except when the State chooses to enforce the law for its own benefit, the condi-

tion is similar to that resulting from a statutory provision which is merely directory. It is not very unlike the old law as to conveyances to aliens. Such conveyances, whether by grant or devise, were good against every one but the State, and could be set aside only after office found. *Fox* v. *Southack,* 12 Mass. 143. *Waugh* v. *Riley,* 8 Met. 290. *Judd* v. *Lawrence,* 1 Cush. 531. *Kershaw* v. *Kelsey,* 100 Mass. 561.

That this is the effect of such limitations in statutes of this kind where the title of the corporation is under a grant, as distinguished from a devise, seems to be the universal rule. *Vidal* v. *Girard,* 2 How. 127, 191. *Runyan* v. *Coster,* 14 Pet. 122. *National Bank* v. *Matthews,* 98 U. S. 621. *Cowell* v. *Springs Co.* 100 U. S. 55, 60. *Jones* v. *Guaranty & Indemnity Co.* 101 U. S. 622. *National Bank* v. *Whitney,* 103 U. S. 99. *Fritts* v. *Palmer,* 132 U. S. 282. *Leazure* v. *Hillegas,* 7 S. & R. 313. *Chambers* v. *St. Louis,* 29 Mo. 543. *Bank* v. *Poitiaux,* 3 Rand. (Va.) 136. *Fayette Land Co.* v. *Louisville & Nashville Railroad,* 93 Va. 274. *Mallett* v. *Simpson,* 94 N. C. 37. *Gilbert* v. *Hole,* 2 So. Dak. 164. *Barrow* v. *Nashville & Charlotte Turnpike Co.* 9 Humph. 304. *Hough* v. *Cook County Land Co.* 73 Ill. 23. *Alexander* v. *Tolleston Club,* 110 Ill. 65. *Barnes* v. *Suddard,* 117 Ill. 237. *Hamsher* v. *Hamsher,* 132 Ill. 273. *Baker* v. *Neff,* 73 Ind. 68, 70. This is a fair deduction from the decisions in this Commonwealth. *Heard* v. *Talbot,* 7 Gray, 113. *Commonwealth* v. *Wilder,* 127 Mass. 1, 6. *Davis* v. *Old Colony Railroad,* 131 Mass. 258, 273. *West Springfield* v. *West Springfield Aqueduct Co.* 167 Mass. 128. *Slater Woollen Co.* v. *Lamb,* 143 Mass. 420. *Prescott National Bank* v. *Butler,* 157 Mass. 548. *Nantasket Beach Steamboat Co.* v. *Shea,* 182 Mass. 147. *National Pemberton Bank* v. *Porter,* 125 Mass. 333. *Atlas National Bank* v. *Savery,* 127 Mass. 75. *Bowditch* v. *New England Ins. Co.* 141 Mass. 292. *Chaffee* v. *Middlesex Railroad,* 146 Mass. 224.

The counsel for one of the petitioners says in his brief, " It is fully conceded at the outset that where a corporation takes and holds property by conveyance, or by executed gift *inter vivos,* contrary to its charter rights, no one but the State can complain. This is settled by a practically unbroken line of decisions in all the States," etc.

But if the statute were a prohibition that renders the holding

utterly void, and the taking also void, as is argued in the opinion in *In re McGraw's estate*, 111 N. Y. 66, anybody interested could take advantage of the violation of law, unless he was precluded by estoppel.    Most of the cases which we have cited do not put their decision on the ground of estoppel.    Often the question might arise when there was no estoppel.    The ground on which most of the cases go is that the implication is not an absolute prohibition, but only a condition affecting the rights of the corporation as between it and the State.    If the holding were an illegality which was utterly void, the condition would be the same whether the taking was by grant or devise, and a variety of unfortunate consequences might follow.    The property might greatly increase in value after its acquisition, as was the case in *Evangelical Baptist Society* v. *Boston*, 192 Mass. 412.    In that case, although the property of the corporation largely exceeded in value the amount authorized by the statute, there was no intimation that the holding was illegal, so long as the State did not interfere.    See also *Humbert* v. *Trinity Church*, 24 Wend. 587, 605.    As to all interests of private persons, in the absence of interference by the State, the cases generally treat titles to property held by corporations in excess of the specially authorized amounts as good.    They allow the corporations to give good titles to purchasers of such property.

Some judges, in holding that such titles cannot be taken under wills, endeavor to found a distinction upon the executed character of a title by grant, and suggest that a devise or bequest is executory.    It seems to us that there is no good reason for the distinction.    When a will is proved and allowed, it takes effect immediately to pass all property affected by it.    The provision in the law against large holdings by corporations has no relation to the probate of the will.    The act of the testator in executing the will is confirmed and given effect as a complete and executed disposition of the property, by the allowance of the will.    In this respect a recorded will does not materially differ from a delivered deed.    The heirs at law are bound by one as well as by the other.

The decisions upon the precise point at issue are conflicting. In *Jones* v. *Habersham*, 107 U. S. 174, a case similar to that now before us, it was held by the court, in an opinion by Mr. Justice

Gray, that, "restrictions imposed by the charter of a corporation upon the amount of property that it may hold cannot be taken advantage of collaterally by private persons." In the same case in the Circuit Court the question had been considered previously, and the same result was reached, in an opinion by Mr. Justice Bradley of the Supreme Court of the United States, which is found in 3 Woods, 443, 475. The same rule is established in Maryland. *Hanson* v. *Little Sisters of the Poor*, 79 Md. 434. *In re Stickney's will*, 85 Md. 79, 104. *DeCamp* v. *Dobbins*, 2 Stew. (N. J.) 36, 40, was decided by the Chancellor on this ground. The decree was affirmed on another ground in the Court of Errors and Appeals, 4 Stew. (N. J.) 671, 690, in an opinion by Beasley, C. J., which contains a dictum disapproving of the view of the Chancellor. In *Farrington* v. *Putnam*, 90 Maine, 405, the court, in a very elaborate opinion, in a case identical in its leading features with that now before us, held that the gift was good. The same doctrine is stated in *Brigham* v. *Peter Bent Brigham Hospital*, 126 Fed. Rep. 796, 801; *S. C.* 134 Fed. Rep. 513, 527. It is also stated in text books. Beach, Corp. (Purdy's ed.) § 825. Thompson, Corp. §§ 5795, 5797.

The leading case which presents the opposite view is *In re McGraw's estate*, 111 N. Y. 66. Although the decision necessarily puts a construction upon a statute of that State, this construction seems to be materially affected by the policy of New York in reference to charities. Said Judge Peckham, who delivered the opinion, "We have a decided mortmain policy. It is found in our statute in relation to wills, prohibiting a devise to a corporation unless specially permitted by its charter or by some statute to take property by devise." In *Chamberlain* v. *Chamberlain*, 43 N. Y. 424, the court refers to the prohibition of devises, and to the N. Y. St. 1860, c. 360, still in force, which makes void all bequests or devises to charity in excess of one-half the testator's property, where he leaves relatives. Other statutes have been passed, limiting the amount that can be devised to certain corporations by one testator, forbidding a devise or bequest to charities, by a person leaving relatives, of more than one fourth of his estate, and making void such gifts where the will was executed within two months before the death of the testator.

Gen. Laws of N. Y. 1901, (Heyd. ed.) 4885, 4891, 4892.   The policy of that State in regard to charities has been very unfavorable.   See *Allen* v. *Stevens*, 161 N. Y. 122, 139, 140 ; *People* v. *Powers*, 147 N. Y. 104; *Fosdick* v. *Hempstead*, 125 N. Y. 581.

The doctrine of the New York court is stated as the law in *Davidson College* v. *Chambers*, 3 Jones Eq. 253, and adopted in *Wood* v. *Hammond*, 16 R. I. 98, 115, and *House of Mercy* v. *Davidson*, 90 Tex. 529.   In the case in North Carolina the decision was by two of the three judges of the court, the Chief Justice giving an able dissenting opinion.   The courts in Kentucky and Tennessee have expressed approval of the McGraw case in New York, but in terms that do not leave the grounds of their decisions entirely clear.   *Cromie* v. *Louisville Orphans' Home Society*, 3 Bush, 365, 383.   *Heiskell* v. *Chickasaw Lodge*, 87 Tenn. 668, 686.   In reference to supposed errors in the opinion in the last case, see Pritchard on Wills, § 153, note, and *Farrington* v. *Putnam*, 90 Maine, 405, 433.

In the construction of our statute, when the question arises whether a different rule shall be established in regard to the taking and holding by a corporation under a will from that which is universally laid down in regard to a holding under a deed, we are much influenced by the policy of our law as to devises and bequests for charitable purposes.   We are of opinion that, under the R. L. c. 125, § 8, a gift to a corporation under a will, to an amount in excess of the sum specially authorized, should be held no less valid than a similar acquisition of title under a deed.   It is good as against every one but the Commonwealth.   It follows that the St. 1906, c. 312, operated as a waiver of the Commonwealth's right to terminate the holding, and a legislative declaration of the entire validity of the provision in the will.

If we are wrong in this conclusion, the petition must be dismissed on an independent ground.   The gift was to a public charity.   The purposes of the Worcester Art Museum, as set forth in the agreement for its organization from which we have quoted, show the charitable uses to which all property held by it must be put.   It is all held " solely in trust, for the benefit of all the people of the city of Worcester."   We have no doubt that the property was given under the testator's will with a general charitable intent, with which the Worcester Art Museum, as a

corporation, had no other connection than as an instrument to carry out the general purpose of the testator. In other words, the gift was not to the Worcester Art Museum as a corporation, apart from the charitable work in which it was engaged, nor on account of anything essential or peculiar in its performance of the charitable work described in its instrument of organization. The general charitable purpose was predominant in the mind of the testator, and not a desire to give to a particular corporation. The charitable purpose may be implied in the name or object of the devisee. *Winslow* v. *Cummings*, 3 Cush. 358. *Bliss* v. *American Bible Society*, 2 Allen, 334. *Incorporated Society* v. *Richards*, 1 Dr. & War. 258, 331. The object of the devisee, as a legally established public charity, was well known to the testator. To state the same proposition in other language, an implication to create a public charity may arise "from the character of the body to which the gift is made, or from publicly avowed purposes of its organization and action." *Old South Society* v. *Crocker*, 119 Mass. 1, 24. *Stratton* v. *Physio-Medical College*, 149 Mass. 505, 508. In such a case, if for any reason the donee named is incapable of executing the trust, the court will not allow the gift to fail for want of a donee. *Fellows* v. *Miner*, 119 Mass. 541. *Codman* v. *Brigham*, 187 Mass. 309. *Osgood* v. *Rogers*, 186 Mass. 238. *Bliss* v. *American Bible Society*, 2 Allen, 334. *Sherman* v. *Congregational Home Missionary Society*, 176 Mass. 349. *Winslow* v. *Cummings*, 3 Cush. 358. *Attorney General* v. *Stephens*, 3 Myl. & K. 347. *Hayter* v. *Trego*, 5 Russ. 113. *Loscombe* v. *Wintringham*, 13 Beav. 87. *Swasey* v. *American Bible Society*, 57 Maine, 523. *Almy* v. *Jones*, 17 R. I. 265.

If the corporation, at the time of the probate of the will, was incapable of taking the property and carrying out the general charitable intent of the testator, the court, applying the doctrine of *cy pres*, would appoint a trustee to act in its place. Inasmuch as the Legislature, by the St. 1906, c. 312, has removed the only ground of its disability, a direction to turn over the property to the corporation would accomplish perfectly the purpose of the testator. *Baker* v. *Clarke Institution for Deaf Mutes*, 110 Mass. 88.

In no view of the case have the petitioners any private right

or interest which has been injured by the respondent, such as brings them within the provisions of R. L. c. 192, § 6.

*Petition dismissed.*

*B. B. Jones,* (*F. P. Cabot* with him,) for Gorham Hubbard and others.

*C. A. Snow,* for Benjamin W. Hubbard and others.

*J. L. Campbell,* (of Virginia,) for Eleanor C. Hubbard, filed a brief by leave of court.

*John Chipman Gray & T. H. Gage, Jr.,* (*Roland Gray* with them,) for the respondent.