FOSTER–EDDY v. BAKER et al.

(Circuit Court, D. New Hampshire. December 9, 1911.)

No. 384.

1. EQUITY (§ 239*)—ADMISSIONS BY DEMURRER.

A general demurrer admits all the material facts averred in a bill, including averments describing the phases and circumstances of the subject-matter put in controversy by the bill.

[Ed. Note.—For other cases, see Equity, Cent. Dig. § 494; Dec. Dig. § 239.*]

2. EQUITY (§ 241*)—DEMURRER—SCOPE OF HEARING.

Substantive rights should be settled on hearing of a demurrer to the bill only when it is clear that no case is stated by the bill, and that complete justice can be done on the hearing.

[Ed. Note.—For other cases, see Equity, Cent. Dig. § 515; Dec. Dig. § 241.*]

3. EQUITY (§ 214*)—DEMURRER—GENERAL ALLEGATIONS.

When a plaintiff seeks to avoid an agreement on the ground of fraud inducing it, motion or answer for more specific allegations, and not a general demurrer, is the proper remedy against the bill for pleading fraud too generally.

[Ed. Note.—For other cases, see Equity, Cent. Dig. § 487; Dec. Dig. § 214*]

4. EQUITY (§ 241*)—DEMURRER—SCOPE OF HEARING.

The question of public policy involved in a bequest for the promotion of Christian Science cannot be determined as one of law on demurrer to a bill which alleges that the practice and teachings of Christian Science are pernicious, and constitute a business against public policy by attempting to heal the sick by methods which violate physical and men-

tal laws, under a system which denies and reprobates all scientific, preventive, and remedial medicine, a system, as taught, which runs counter to the great body of common, state, and municipal law based thereon, and designed to improve and preserve the health, and save and lengthen the lives of the people, etc.

[Ed. Note.—For other cases, see Equity, Dec. Dig. § 241.*]

5. EQUITY (§ 241*)—DEMURRER—SCOPE OF HEARING.
Under the federal practice, a Circuit Court need not determine a difficult and controverted question of law on demurrer, where full proof and a trial will permit consideration of the whole controversy with a view to a final determination.

[Ed. Note.—For other cases, see Equity, Cent. Dig. § 515; Dec. Dig. § 241.*]

6. COURTS (§ 493*)—COMITY—STATE AND FEDERAL COURTS.
A federal court need not await decision by a state Supreme Court in a pending suit of a question of construction to be given a statute of the state involved in a bill before the federal court; plaintiff not being a party to the state litigation.

[Ed. Note.—For other cases, see Courts, Dec. Dig. § 493.*

Pendency of action in state or federal court as ground for abatement of action in the other, see notes to Bunker Hill & Sullivan M. & C. Co. v. Shoshone Mining Co., 47 C. C. A. 205; Barnsdall v. Waltemeyer, 73 C. C. A. 521.]

In Equity. Bill by Ebenezer J. Foster-Eddy against Henry M. Baker, executor, and others. On demurrer to the bill and on application for leave to amend the bill. Demurrer overruled. Amendment allowed.

Wm. E. Chandler, John W. Kelley, De Witt C. Howe, Hannis Taylor, Wm. L. Chambers, and John D. Long, for complainant.

Streeter, Demond & Woodworth, Samuel J. Elder, Wm. A. Morse, and Leon M. Abbott, for defendants.

ALDRICH, District Judge. This is a bill in equity brought by Dr. E. J. Foster-Eddy, an adopted son of Mary Baker G. Eddy, against Henry M. Baker, executor of the will of Mary Baker G. Eddy, late of Concord, N. H., who was founder of the Christian Science Church, and Josiah E. Fernald, Archibald McClellan, and Adam H. Dickey, as trustees under a certain deed of trust, and Stephen A. Chase, Archibald McClellan, Allison V. Stewart, John V. Dittemore, and Adam H. Dickey, as members of the Christian Science Board of Directors of the Mother Church, the First Church of Christ, Scientist, in Boston, Mass.

The present hearing has been upon questions raised by the pleadings, and the pleadings thus far consist of an original bill filed January 13, 1911, a demurrer filed April 17, 1911, an amendment to the bill filed and allowed May 2, 1911, a demurrer or demurrers to the bill as amended filed July 1, 1911, a proposed further amendment filed August 29, 1911, not yet allowed, and an interlocutory motion by the defendants asking that the question whether the plaintiff has a right to enter upon legal controversy in respect to the estate, in which it is alleged he has relinquished his entire interest, be determined as a preliminary question.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

The demurrer or demurrers are general, with some features of special demurrer, suggesting special grounds to be considered and determined in the event of the general demurrers not being accepted as stating a full and complete defense.

[1, 2] Although the arguments have taken very wide range, it must be understood at the outset that the hearing has been upon bill and demurrer only, and that the questions thus presented must be governed by the scope of such a hearing. For the purposes of such a hearing, and through a fiction of law universally accepted, a general demurrer admits all the material facts averred in a bill, including averments describing the phases and circumstances of the subject-matter put in controversy by the bill (American School of Magnetic Healing v. McAnnulty, 187 U. S. 94, 23 Sup. Ct. 33, 47 L. Ed. 90); and, whatever may have been the ancient practice, the modern trend of judicial decision is against the idea of attempting to settle substantive rights upon such a hearing, except in cases where the subject-matter in controversy is of such a nature as to make it clear that comprehensive and complete justice can be done in the narrow field presented by the allegations of the bill; and the rule governing modern procedure and practice goes unchallenged that ultimate rights will not be established upon bill and demurrer, unless it is clear upon the most favorable aspect of the admitted facts that no case is stated by the bill. Kansas v. Colorado, 185 U. S. 144, 22 Sup. Ct. 552, 46 L. Ed. 838.

I am strongly impressed with the conviction that the situation under consideration is one which falls far short of justifying an attempt to establish ultimate rights upon bill and demurrer. The arguments upon the alleged merits and demerits of the bill upon this hearing under a demurrer which, for the purposes of such a hearing, admits the truth of all that is alleged, at once present important and difficult questions of law and different understandings of the parties as to the substance and effect of the allegations of the bill in respect to law as well as fact.

In this case both parties claim they are entitled to final relief upon the pleadings as a result of this hearing; the position of the plaintiff being that as the demurrer admits the facts as alleged, and as the bill discloses teachings and doings manifestly contrary to the public policy of New Hampshire and that of Massachusetts, and a bequest which is at once void as against the public policy and the laws of these states, and as the release of the heir in question was, as alleged, procured through concealment and fraud, that a final decree for the plaintiff should follow. On the contrary, the defendants claim that a certain duly and solemnly executed deed of release with covenants, which is a part of the plaintiff's bill, operated to entirely extinguish the plaintiff's right to institute and maintain this proceeding, or any other, in respect to the will of Mrs. Eddy, and that, as the bill discloses no efficient grounds of fraud or of public policy, a final decree should be entered in their favor upon demurrer.

Neither view is so clearly established as to warrant a final disposition of the case at this stage of the proceeding.

Without going into all the particulars and all the allegations of the

bill, the plaintiff, among other things, alleges that he is an heir of Mrs. Eddy, and that she had an estate of $2,000,000 or more, and admits that he executed an agreement whereby certain of his rights were surrendered, and makes the agreement a part of his bill.

The bill further sets out that the agreement in question, the object of which, it is alleged, was to prevent controversy as to the mental capacity and alleged delusions of Mrs. Eddy, would not have been executed by the plaintiff if he had known the contents of the will or any purpose on his mother's part to make an unlawful donation, and that he never would have agreed to any such plan if he had known it, and that all he agreed to was that in consideration of payments to himself she might, if she saw fit, dispose of the remainder of her property in any lawful way.

Upon arguments parties do not agree as to the proper construction and effect of the agreement or release, but the bill is drawn upon the theory, whatever may be the true construction, that the effect of the agreement or release may be so far avoided upon grounds of fraud and concealment as to permit the plaintiff, an heir at law, to put in issue questions of public policy, and the question of the validity of the residuary bequest.

It is conceded that the bequest covers $2,000,000 or more of income-bearing properties, and was to the Mother Church—the First Church of Christ, Scientist, in Boston, Mass.—in trust for certain purposes. According to the desire of Mrs. Eddy, as expressed in her will (the provision as to the Pleasant View property having been changed by codicil), the income of the residuary estate is to be devoted to keeping in repair, so far as necessary, the church building and her former house at No. 385 Commonwealth avenue, Boston, which had been transferred to the Mother Church, and any building or buildings which may by necessity or convenience be substituted therefor, and to the purpose of more effectually promoting and extending the religion of Christian Science as taught by her. The residuary clause, which is the one principally urged as offending the laws and as against public policy, after providing for the necessary repairs upon the former house of Mrs. Eddy and for buildings substituted therefor, concludes as follows:

"And I desire that the balance of said income, and such portion of the principal as may be deemed wise, shall be devoted and used by said residuary legatee for the purpose of more effectually promoting and extending the religion of Christian Science as taught by me."

The statute of New Hampshire (Pub. St. 1901, c. 152, § 10), which the plaintiff claims is offended by this bequest, is as follows:

"The income of any grant or donation made to or for the use of a church shall not exceed $5.000 a year, exclusive of the income of any parsonage lands granted to or for the use of the ministry."

And that of Massachusetts (Rev. Laws, c. 37, § 9):

"The income of the gifts, grants, bequests and devises made to or for the use of any one church shall not exceed $2,000 a year exclusive of the income of any parsonage land granted to or for the use of the ministry"

The bill and the amendments allege as fact, among other things, that Mrs. Eddy was under delusions and that her mind was poisoned

against the plaintiff by the directors of the Christian Science Church, into whose custody and control she had passed, who exercised dominant control in respect to the will, and that through the influence of prejudice and in pursuance of a plan through concealing from her the prohibitions of the statutes of Massachusetts and New Hampshire, procured a gift of substantially all her property, and through fraud, and for the purpose of increasing the security of what is alleged to be an unlawful bequest, that they sought the family settlement, and that this was brought about through deception and fraudulent means.

These allegations are not answered or denied by pleadings, and are admitted by the demurrer. Thus an aspect of fact is presented which goes to the standing or validity of the agreement or release of the plaintiff.

[3] The position of the defendants in this respect is that the claim of fraud fails, because the facts alleged do not constitute fraud. I do not think this position so clear as to warrant a decree for the defendants upon demurrer. The law does not recognize, as binding, conditions created through fraudulent suppression and concealment of material facts, or through fraudulent exercise of improper influence in order to obtain unlawful results, and where fraud is alleged as something inducing material results, though in general terms, it is something which the defendant is bound to answer, and, if the allegations are too general, the remedy is to resort through motion or answer for more specific allegations. It results, therefore, that the defendants are bound to answer to the end that questions as to the validity and invalidity of the agreement or release, and as to its effect upon the plaintiff's right to bring and maintain a suit, may be ascertained, upon their merits, upon issues of fact and proofs.

It now becomes necessary to consider further positions of the defendants, which, in substance, are that, if there were no agreement extinguishing the plaintiff's interests in Mrs. Eddy's estate, the residuary bequest, which is for the more effectual promotion of the religion of Christian Science, is not against public policy, because it is for the promotion of a religion involving Christian faith, not subversive of the laws, and as such a religion having immunity under the Constitution, and that the bequest does not offend the statutes in question, because it was a charitable trust, and not a gift to a church. As to both of these general positions, the defendants claim that so far as the question of public policy is involved, either in the teachings, tenets, doctrines, and practice of Christian Science as such, or in the statutes to which reference has been made, which direct the limitation upon the right to hold, above a certain amount, against all churches and religious societies alike without discrimination, is a question which resides alone in the sovereign state, and one which can be invoked only by the Attorney General, its sole and only representative for such purposes.

[4] It is also claimed in effect by the defendants that if the proper parties plaintiff were here that the question of public policy involved in Christian Science is a question to be determined as a matter of law rather than as a question of fact or as a mixed question of law and fact, and that the inquiry should be limited to an examination of the

Christian Science books, the tenets and teachings, rather than upon proofs by individual witnesses as to the practice in communities. One of the principal authorities upon which the defendants rely in this respect is that of the Dublin Case, 38 N. H. 459, where it is said at page 513 that the general meaning of the terms "Congregational minister," "Congregational church," "Congregational denomination," and "Congregational persuasion," is not a matter of fact, to be proved by the testimony of witnesses, but a matter of law to be determined by the court. This case, with its elaborate and useful opinion by the learned Chief Justice Perley, must be read in its entirety in order to see how far this single expression should govern in a situation like the one presented by the pending bill upon demurrer. The question there was one which involved more the meaning of terms and phrases than questions of pure fact, and, so far as supposed questions of fact were involved or urged, they were not of the kind and character of those alleged by the bill under consideration. Neither was it a case on demurrer which admitted facts; on the contrary, there were answers and proofs. Indeed, at page 513, the learned judge, after disclaiming familiarity with the great questions involved, and the theological inquiries which he would willingly have avoided, proceeds to the consideration of the weight that should be given to witnesses who had made the doctrines and history of the Congregational denomination a particular study, and, after expressing obligation to the witnesses for their assistance by referring to the authorities on which their opinions were founded, says that the meaning of the terms "Congregational minister," "Congregational church," "Congregational denomination," and "Congregational persuasion" is not fact to be proved by witnesses, but a matter of law for the court. No one would dissent from the wisdom of such reasoning, because it had reference to the construction of terms as explained by arguments and evidence where the ultimate question of construction was to be determined by the court, rather than upon the opinion of witnesses. It is sufficient to say that the allegations here are of an entirely different character than those of the pleadings in the Dublin Case.

While not reciting all allegations in respect to teachings and practice presented by the bill under consideration, it is sufficient, for the purpose of showing that the question of public policy involved cannot be determined as one of law, to say that the plaintiff alleges that the practice and teachings of Christian Science are pernicious and hostile to organized society, constitute a business which is forbidden and made void by public policy and the laws of the land; that the business consists mainly in the practice of attempting to heal the sick and diseased by methods which are dependent for success upon the total extirpation and obliteration from the mind of the patient and his attendants of all knowledge of the human structure and system, of all physical and mental laws, and of the evidence presented to the mind by the senses; that the system installs a fanatical belief in its own efficacy in the cure of all diseases, which belief the patient must hold to, despite all the protests of the senses and of reason; that for the treatment of sick children and other sick and dependent persons, whose minds are incapable of grasping and holding to the fa-

natical belief, the system prescribes such belief in the parents and guardians; that the system teaches that those who are well should neglect all useful precautions against sickness, and that those who are sick should forego all appropriate relief; that it teaches parents and others upon whom children and helpless persons are dependent to neglect the health and sacrifice the lives of these dependents; that the healers of the system are usually ignorant of the cause and cure of disease, of anatomy, physiology, and hygiene, and that they are taught to earn their livelihood by the practice of criminal negligence, sometimes amounting to manslaughter, upon sick and dependent people and children; that the system taught by the book denies and reprobates all scientific preventive and remedial medicine, and runs counter to the great body of common, statute, and municipal law based thereon and designed to improve and preserve the health and save and lengthen the lives of the people.

It is not necessary in connection with this phase of the case to refer to all the allegations of the plaintiff's bill against the teachings and practice of Christian Science. It is simply a question now whether there are any facts alleged which should be answered. It is therefore sufficient to see that there are allegations presenting questions which cannot be ruled favorably to the defendants as matter of law upon demurrer. In other words, the question of public policy in respect to Christian Science, as presented on the face of the bill, cannot be determined as a pure question of law.

It must be understood that in dealing with this feature of the case, and this supposed phase of public policy, that no rule is being suggested as to what the issues should be, and that no rule is being established under supposed issues as to the kind or measure of permissible proofs, or as to scope or extent of inquiry in respect to questions of religion or faith. Nor do we now determine whether there is a line to be drawn between faith and practice as was apparently done in State v. White, 64 N. H. 48, 5 Atl. 828, on one side of which there might be immunity from inquiry, and upon the other side of which there might be freedom of inquiry, to see whether under the practice as taught general conditions exist which are subversive of organized society, and the general system of laws established in the interests of sanitation and protection of health, and therefore against public policy as alleged. Neither the book referred to in the arguments as Science and Health, nor anything showing comprehensively the doings of the organization in question, have been submitted, nor could they be under such a hearing as this, and it is thus manifest that the questions as now presented are not susceptible of reasonable solution upon this bill with all the facts admitted by demurrer.

It results, therefore, so far as this branch of the case is concerned, that all these questions, except the single question whether there is anything alleged in the bill which requires answer, are left open for consideration and determination when presented upon such pleadings and proofs as properly present them for determination.

[5] As to the questions based upon the statutes limiting the amount

which churches and religious societies may hold, the positions of the defendants are that the bequest was not to a church as a religious society, but for charitable uses, and that if this question should be determined against them, that under the doctrine of *cy pres,* the trust should be made effectual through the appointment of a competent trustee with capacity to receive and hold. The defendants' positions were maintained by able and elaborate arguments involving both the view that the trust was not to the church, but for charitable purposes, and therefore not affected by the statutes, and, being in accordance with public policy and equity, that it should be declared a valid trust upon that theory, as well as the further view that if, under construction of the residuary clause and the statutes, it should be otherwise determined, that the trust should be safeguarded and perpetuated by the appointment of some other agency than the church for that purpose. It is also urged that it has been settled by a long line of decisions, starting with Farrington v. Putnam, 90 Me. 405, 37 Atl. 652, 38 L. R. A. 339, and ending with Hubbard v. Art Museum, 194 Mass. 280, 80 N. E. 490, 9 L. R. A. (N. S.) 689, a decision in a state whose laws it is claimed govern this question of the right to receive and hold, that conveyances made to charitable and other corporations in excess of statutory limitations are valid as against heirs and all the world except the commonwealth, and that no one but the commonwealth can assert their invalidity.

In respect to these positions, the plaintiff claims that the decisions upon which the defendants rely have reference to corporations created by the state by charter and otherwise, and therefore directly amenable to the power creating them, and, that being so, that they have no necessary application to a religious society not created by the state, because the question of public policy is a different one in the two instances, and that as a result of the difference in this regard, while excessive corporate holdings may be voidable only, that excessive holdings of churches and religious societies are so far against public policy as to be absolutely void because there is neither the right to give nor the right to hold.

One claim of the plaintiff is that under the historical view of the Statutes of Mortmain, and under their English judicial interpretations which were accepted by this country, statutory limitations upon the right of churches and religious societies to receive and hold were in the interests of heirs and for their protection against dispositions made by languishing and dying persons, as well as for the protection of the state against excessive aggregations of wealth by churches and religious societies, and that, as they operate upon the right to give as well as upon the right to receive and hold, the bequest is void.

One of the defendants' answers to these positions of the plaintiff is that the Christian Science Church is incorporated, or at least that in some of its features it is incorporated. This is not in accordance with the theory of the bill, the allegations of which are admitted, and the plaintiff's arguments proceed upon the contrary theory. No record of the incorporation is in the case, and because of that lack, as well as because of the important, difficult, and doubtful questions of statutory construction, far-reaching questions of a public character,

the situation does not require or justify a determination of the suggested questions of law at this stage of the proceeding.

The federal practice and procedure do not require that we should single out and seize upon these difficult and controverted questions of law in advance of the presentation of proofs and a record which would enable a consideration of the whole controversy with a view to final determination. Indeed, under the federal system of equity procedure, no provision is made for singling out important questions of law for determination preliminary to the presentation of the whole case and final judgment. In other jurisdictions there are rules of practice and procedure which provide for such a course. Such rules have reference to the conduct of causes, and each jurisdiction adopts such rules in that respect as are deemed suitable for convenience and justice, and we see no occasion for discussing the question as to which is the better course of procedure.

[6] It was claimed in argument by the defendants, and the fact was not controverted, that there is now pending in the state courts of New Hampshire a proceeding by another heir, which puts in issue the construction of the New Hampshire statute limiting church incomes and the question whether the religion of Christian Science contravenes the policy of the state, and, that such questions being questions of local law, the decision of the state Supreme Court would conclude the questions presented here, and it is further suggested that this court may well consider before entering upon the main question whether it should not await the decision on the demurrers in the Glover suit. We do not feel free to accept that view, because of the rule enunciated by the Supreme Court of the United States in Burgess v. Seligman, 107 U. S. 20, 33, 2 Sup. Ct. 10, 27 L. Ed. 359, that while the courts of the United States in the administration of state laws, especially with regard to the construction of state statutes and Constitutions, are governed by established rules of construction and accept them as authoritative declarations of what the law is, that as they exercise independent jurisdiction co-ordinate with that of the state courts, in cases where the law has not been settled, and where there are no established rules of law in respect to the questions at issue, that it is the right and duty of federal courts to exercise their own judgment upon the questions before them.

In view of this mandate in respect to duty, it would not seem justifiable to say to the plaintiff, who is asserting his right here, that he should await the result of the decision by another court, in a case to which he is not a party.

I do not consider that the rules of procedure, which govern this hearing, require that the special grounds of demurrer should be singled out and determined in advance of the general merits, because they will remain as available questions to the defendants through the instrumentality of an answer.

The defendants' interlocutory motion for an order that the question, whether the plaintiff is precluded from maintaining his bill by the family settlement and release of November, 1909, be heard and determined as a preliminary question at this time, is denied, with discretion fully reserved for all stages of this proceeding, subsequent to

an answer, to limit the evidence, define, or separate the issues as jus-tice may require.

The general demurrer is overruled.

The proposed amendment filed August 29, 1911, is allowed. The defendants will answer under the rule.