THE HOUSE OF MERCY OF NEW YORK v. S. G. DAVIDSON.

Decided March 29, 1897.

1. Foreign Corporation—Charter—Limitation of Powers.

A foreign corporation can exercise in this State no power prohibited to it by its charter. The general laws of another State limiting the powers of a corporation created therein constitute the charter of such corporation and limit its capacity to act in Texas to the same extent as if chartered by a special act of such foreign State containing the same limitation. (P. 533.)

2. Same—Capacity to Hold Land.

Land in Texas was devised to a residuary legatee, a corporation of New York, prohibited by the general incorporation law of that State, under which it was created, from receiving or holding land exceeding in value a named amount, the corporation already holding lands to the value so limited. Held, that the title did not vest in such devisee, for want of capacity in the corporation to receive and hold it, but descended to the heirs. (P. 533.)

3. Same—Who Can Question Capacity.

The heirs or those claiming under them could defend the title on the ground of such want of capacity in the devisee, though the State only could raise such question in case of a deed to the corporation. (P. 533, 534.)

QUESTIONS CERTIFIED from the Court of Civil Appeals, Second District, in an appeal from Young County.

*R. F. Arnold & A. M. Carter*, for appellant, the House of Mercy of New York.—The devise by Isaac Cromie, a citizen of the State of Kentucky, of his lands in the State of Texas to the House of Mercy of New York, a charitable corporation of said State of New York, vested the title in it to such lands, notwithstanding the general law of New York of April 12, 1848, under which the House of Mercy was incorporated, providing that all such corporations and their successors, by their corporate name, should, in law, be capable of taking, receiving, purchasing and holding real estate, for the purpose of their incorporation and for no other purpose, to an amount not exceeding the sum of fifty thousand dollars in value, and notwithstanding the House of Mercy of New York did at the date of the death of Isaac Cromie own in New York that amount of real estate. The first section of the Act of January 20, 1840, art. 978, P. D. Laws, provides, "That the common law of England (so far as is not inconsistent with the Constitution or the acts of Congress now in force) shall, together with such acts, be the rule of decision in this Republic, and shall continue in full force until altered or repealed by Congress." The power of a corporation at common law to take land by devise is equally clear. 5 Thompson, Corporations, art. 5782; Sherwood v. Society, 4 Abb. Ct. App. Dec. (N. Y.), 231; 1st Kidd, Corp., 74-78; Grant on Corp., 98. In the absence of constitutional provision or statutory enactment the common law is the rule of decisions in this State. Ryan v. Porter, 61 Texas, 108. The title to land depends upon the lex rei sitae, no matter where the deed or will or other instrument under which it is sought to effect a devolution of title is made. The operation of the statute of wills of another State can have no force or effect upon the title to land in Texas. 5 Thompson, Corp., art. 5784. The statutes of mortmain of England, beginning with Magna Charta, 9 Henry III and end-

ing with 9 George II, have never been in force in Texas, not being included in the said act of 20th of January, 1840. The capacity of a corporation to take and hold title has generally been maintained and recognized in this State.   5 Thompson, Corp., art. 5770; Russell v. Railway, 68 Texas, 646.

The heirs of Isaac Cromie nor their vendees can avail themselves of the disability of appellant to take under Isaac Cromie's will, because of prohibition in said Act of April 12th, 1848. The State alone can question the title of the corporation, even though the law of its creation prohibited it from owning more property than a specified amount.   Russell v. Railway, 68 Texas, 646; 5 Thompson, Corp., art. 5795; Banks v. Poitiaux, 3 Rand. (Va.), 136; Hayward v. Davidson, 41 Ind., 213; Clarkins Case, 14 Cal., 545; Leazure v. Hillegas, 7 Serg. & Raw., 313; Baird's Case, 11 Serg. & Raw., 411; Alexander v. Tolleston Club, 110 Ill., 65; Cowell v. Springs Co., 100 U. S., 56; American Mortgage Co. v. Tennille, 12 Law Rep., Ann., 529.   A cause of forfeiture cannot be taken advantage of collaterally or in any other way than by direct proceeding by the State against the corporation.   In re Railway, 70 N. Y., 327; Moore v. Railway, 108 N. Y., 104; Girard v. Phila., 7 Wall., 2; Towar v. Hale, 46 Barb., 361; Ang. & Ames on Corp., sec. 777.

*Greene & Stewart* and *Johnson & Aiken*, for appellee, G. W. Davidson. —Considering the questions in the order in which they are submitted, we respectfully contend that, appellant at the date of the testator's death having all the real estate it was allowed under the law of its creation to hold, the devise or attempted devise to it of the land in controversy was void and vested no title in it, but that the title to said land descended to and vested in the heirs of said testator, and that said heirs or their grantees may avail themselves of the disability of appellant to take the land as a defense in this case.   In Re McGraw's Estate, 111 N. Y., 66; 19 N. E., 233; 2 Law Rep. Ann., 387; Chamberlain v. Chamberlain, 43 N. Y., 424; White v. Howard, 46 N. Y., 144; DeCamp v. Dobbins, 31 N. J. Eq., 690; Starkweather v. Am. Bible Society, 72 Ill., 50; Talmadge v. North Am. Coal Co., 3 Head (Tenn.), 337; Van Kleeck v. Reformed D. Church, 20 Wend., 481; Cromie's Heirs v. House of Mercy, 3 Bush. (Ky.), 365; Goddard v. Pomeroy, 36 Barb., 546; Barton v. King, 41 Miss., 288;  6 Thompson on Corporations, secs. 7905, 7919 and 7920; also, Vol. 5, sec. 5784.

A foreign corporation can exercise and enjoy only such rights, franchises and privileges in a distant State as are expressly conferred upon it by the law of the State in which it is created.   The comity existing between the States by which foreign corporations are allowed to transact business away from home only goes to the extent of allowing such corporations the privilege of exercising the rights, powers and franchises conferred upon them by the law of the State in which they are incorporated and no further, and this only when the exercise of such corporate rights is not in violation of local law.   5 Thompson on Corporations, sec.

5784; Diamond Match Co. v. Powers, 51 Mich., 145; 8 Am. and Eng. Corp. Cases, 144; Thompson v. Waters, 25 Mich., 214; Bockover v. Life Association, 77 Va., 85; Relfe v. Rundel, 13 Otto, 225; Starkweather v. Bible Association, 72 Ill., 50.

It must be kept in mind that the case under consideration here is that of a corporation seeking the aid of the courts in obtaining possession of property it is forbidden by law to hold. In other words it is a case of a corporation asking the courts to aid it in breaking and violating the very law that gave it its being, and which it at least impliedly agreed to obey.

In the McGraw case, supra, it is said that a corporation seeking the aid of a court in obtaining possession of property it claims under a will must show its authority to take; and in Case v. Kelley, 133 U. S., 21, the Supreme Court of the United States draws a distinction between a case where the corporation had already acquired the possession of property it has no right to hold, and where it is seeking the aid of the courts in obtaining such possession.

BROWN, ASSOCIATE JUSTICE.—The Court of Civil Appeals for the Second Supreme Judicial District has certified to this court the following statement and questions:

"In 1865 Isaac Cromie died at Louisville, Kentucky, and left a will in which he named the House of Mercy of New York as a residuary legatee and devisee. A portion of his residuary estate consisted of lands in the State of Texas. The House of Mercy of New York, appellant herein, is a charitable corporation domiciled in the State of New York and created under an Act of the Legislature of that State, entitled "An Act for the Incorporation of Benevolent, Charitable, Scientific and Missionary Societies," passed on April 12, 1848. Said Act contains the following provision respecting the corporations authorized to be created thereunder: "And they and their successors by their corporate name shall in law be capable of taking, receiving, purchasing and holding real estate, for the purpose of their incorporation and for no other purpose, to an amount not exceeding the sum of Fifty Thousand Dollars in value, and personal estate for like purposes to an amount not exceeding Seventy-five Thousand Dollars in value." Appellant was incorporated in the year 1860 by filing a certificate of incorporation under the law above mentioned. At the time of Cromie's death it owned real estate of the full value of Fifty Thousand Dollars, and personal property of the value $678.75. The executors of the will subsequently delivered to it personal property in amount sufficient to make, with that already owned by it, the sum of $75,000. In the year 1866 the heirs of Isaac Cromie filed a suit in equity in the Chancery Court of Louisville, Kentucky, against the executors of the will, and others, for the recovery of all the property included in the residuary clause of the will. The executors answered and prayed that the House of Mercy of New York, and the other residuary legatee and devisee, the Presbyterian Orphans' Home of Louisville, be made parties. And also in their answer alleged that the Institution of Mercy of New

York, another charitable corporation, was claiming to be the beneficiary intended by the testator, instead of the House of Mercy, and prayed that said Institution of Mercy be made a party to the suit and that said parties be cited to appear and have their respective rights adjudicated. All said parties did appear and become parties to said suit, setting up their several claims under the will. The final result of the suit was a judgment by the Court of Appeals of Kentucky, revising the judgment of the lower court, and adjudging that the House of Mercy of New York, and not the Institution of Mercy, was intended by the testator to be his beneficiary; and further adjudged that the House of Mercy of New York, being in possession of real estate of the value of $50,000 at the time the will went into effect, was incapable, on account of the provision in the law of its creation, to take any real estate devised by the residuary clause of the will, and that the devise to it was for that reason void and the property vested in the heirs of Cromie. The court also directed that personal property sufficient in value to make, with that held by appellant at the time of Cromie's death, equal to the sum of $75,000 be delivered to appellant out of the estate of testator. This direction was carried out and the personal property delivered to and received by appellant. Cromie's Heirs v. House of Mercy, 3 Bush. (Ky.), 365.

"Appellant never took possession of the land in controversy nor exercised any acts of ownership over it, such as paying taxes, etc., until the institution of this suit in the year 1894. Appellee claims the land through conveyances from and under the heirs of the testator Cromie, and is in actual possession thereof and was in such possession at the time of the institution of this suit, and he and those under whom he claims have regularly paid all taxes due on the land.

"Appellant claims the land under the will of Cromie which made it a residuary devisee and legatee after the payment of specific legacies. The land in dispute is part of the estate devised by the residuary clause of the will to it.

"The questions we submit are: Did the devisee to appellant vest title to the land in Texas in appellant, it owning at the date of Cromie's death real estate in value equal to the sum of fifty thousand dollars; and, if not, can the heirs of Cromie, or their grantees, make the disability of appellant to take the land available as a defense in this suit? In other words, does the fact that appellant was prohibited by the law of its creation from taking more land than it owned at the time the will went into effect, render the devise to it of the land in Texas void, or only voidable?

"And did the judgment of the Kentucky court adjudicate and settle the rights of appellant under the will, so as to bar a recovery of the land in controversy, or rather its acceptance of the benefits thereof?"

To the first question propounded, we answer the title to the land in controversy did not vest in appellant under the will of Cromie, because the corporation was without capacity to receive and hold it at the time the will took effect; and we also answer that the land descended to and vested in Cromie's heirs, and they, or those who claim under them,

can defend their title against the appellant by showing that it had not capacity to take the land under the will.

We understand from the statement accompanying the question, that there was a general law in New York authorizing the formation of certain classes of corporations by filing articles in accordance with the provisions of that law, and that the appellant was incorporated under that general law, which contained the provision quoted in the statement, to the effect that corporations therein named were empowered to hold lands to an amount not exceeding $50,000 in value. This general law with the articles filed under it constituted the charter of the appellant, and its power to take and hold land in Texas must be governed by the provisions of that law to the same extent that it would be if the appellant had been chartered by a special Act of the Legislature of New York containing the same limitation upon its power to take and hold land.  Granger L. & H. Ins. Co. v. Kamper, 73 Ala., 325; 1 Thompson, Corporations, sec. 216; American Water Works Co. v. F. L. & T. Co., 20 Col., 203, 46 Am. St. Rep., 285.

A foreign corporation can exercise in this State no power prohibited to it by its charter, or by the governing statutes under which it is organized, and the appellant corporation, being incapacitated under the law of New York, its charter, to receive the lands devised to it in Cromie's will, which land was situated in Texas, had no more capacity to take the land in Texas than it would have had if the land had been situated in the State of New York.  Talmadge v. Am. Coal & T. Co., 3 Head, 340; Thompson v. Waters, 25 Mich., 214; Diamond Match Co. v. Powers, 51 Mich., 145; Bank v. Earle, 13 Pet., 587.

In the case of Thompson v. Waters, cited above, Judge Christiancy, of the Supreme Court of Michigan, speaking of the powers of a foreign corporation, said:  "As it was an artificial being, created only by the laws of Indiana, and by them alone endowed with whatever powers and capacities it possesses, it could have no capacities nor exercise any powers anywhere, which were not, expressly or by implication, given by those laws; or, in other words, no powers or capacities which would not be recognized and sustained by the courts of that State, had the same question of capacity to take these lands come before them for adjudication."

It is claimed by counsel for appellant that if it be conceded that the House of Mercy was incapacitated to take the land in Texas under the will, still no one but the State can set up that incapacity and defeat the title claimed by the corporation. This is the rule generally applied to acquisitions of land by corporations through purchase, but the doctrine does not apply to devises of lands to such corporations as are disqualified to receive them.  Estate of McGraw, 111 N. Y., 66, 2 Law Rep. Ann., 392; Van Kleeck v. Dutch Church of N. Y., 20 Wend., 480; Starkweather v. The Am. Bible Society, 72 Ill., 50; DeCamp v. Dobbins, 31 N. J. Eq., 690.

In the case of the estate of McGraw, above cited, Judge Peckham

states the reason of the rule applied to purchases of land by corporations without capacity to take such property, in the following language: "The other cases cited in the printed argument of the counsel for the appellant are mostly cases where a corporation has contracted with parties on a valid consideration, and where a conveyance has been made, and then it is sought to raise the question as to the power of a corporation to take or convey title; and it has been held that in such cases of an executed contract, if the corporation has violated the statute, the party seeking to set up such violation would not be heard, and in such case none but the State would. That one who contracts with a corporation shall not, under such circumstances, be heard to raise the question, is, in substance, the principle decided." And in the same case the learned judge states the rule applicable to cases like the one under consideration in the following language: "In the case of a devise, however, the case is essentially different. The will does not take effect until the testator's death; and then, if his property is not legally devised or bequeathed, no title vests for a single moment in the devisee or legatee, but it vests instantly in the heir or next of kin; and the corporation claiming under the will asks the aid of the law to give the property to it, and in so doing it must show the authority it has to take. And if there were only a prohibition in words against holding the property, would the law not be doing a vain thing in handing it over to the corporation, which, by the very fact of holding, would render itself liable to have its charter forfeited on that account? Would not the prohibition against holding be properly and necessarily construed as a prohibition against taking also?"

Whether the distinction made by the courts between the effect of a purchase by and a devise to a corporation or person incapacitated to take the property be sound or not, it is well established by the authorities, and we think the rule as to devises is founded on sound principles.

If one dying testate devise to an alien land which, by the law of the State where it lies, the devisee cannot take under the will, the devise will be disregarded to that extent, and the property will go to the residuary legatee or next of kin who is capacitated to take it. (Hardy v. De Leon, 5 Texas, 240; Orr v. Hodgson, 4 Wheat., 560.) This class of cases is represented by Orr v. Hodgson, the leading case on the subject, which by analogy strongly supports the conclusion reached in this case.

Under the rule applied to purchase by an alien or corporation incapacitated to hold land, the vendor who has for a valuable consideration conveyed the property to such alien or corporation is estopped to deny the capacity of his vendee to take the title. The State alone can question such a title. But the doctrine of estoppel does not apply to a testator, and if the devisee named in a will has not the capacity to take the property the devise will be void and the law will vest the title in the heir.

Our conclusions expressed above make it unnecessary to answer the remaining question.