WOOTEN et al. v. DERMOTT TOWN–SITE CO. et al. (No. 8203.)

(Court of Civil Appeals of Texas. Ft. Worth. May 22, 1915.)

1. CORPORATIONS ☞435—POWERS—HOLDING REAL ESTATE.

Absent prohibition in statute or charter, a corporation can take and hold land, except as restricted by the objects of its creation and the limitations of its charter.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 1763–1771; Dec. Dig. ☞435.]

2. SPECIFIC PERFORMANCE ☞116¾—DEMURRER—MATTERS NOT APPEARING ON FACE OF PLEADING.

Even if a railroad company cannot take a donation of land to hold for purely speculative purposes, its petition for specific performance of a contract for conveyance of land is not demurrable on that account, it not affirmatively showing that the land was not intended by it for the purpose of a town site or water reservoir or other use within the express grant of power made by Rev. St. 1911, arts. 5439–5441, 6537–6539.

[Ed. Note.—For other cases, see Specific Performance, Cent. Dig. § 376; Dec. Dig. ☞ 116¾.]

3. SPECIFIC PERFORMANCE ☞6—PARTY ENTITLED.

Specific performance of a contract, if available at all, is available alike to either party under the same circumstances; that is, to the one who has performed his part of it, the other refusing to do so.

[Ed. Note.—For other cases, see Specific Performance, Cent. Dig. §§ 9–11; Dec. Dig. ☞6.]

4. PLEADING ☞214 — DEMURRER — ADMISSIONS.

On demurrer to a petition for specific performance, its allegation that plaintiff has fully performed its part of it is to be taken as true.

[Ed. Note.—For other cases, see Pleading, Cent. Dig. §§ 525–534; Dec. Dig. ☞214.]

5. CORPORATIONS ⊚⇒387 — HOLDING LAND — QUESTIONING POWERS.

Capacity of a corporation to take and hold land can be questioned only by the state, and so not by the individual defendant in an action by a corporation for specific performance of a contract to convey land to it.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 1548–1553; Dec. Dig. ⊚⇒387.]

6. SPECIFIC PERFORMANCE ⊚⇒114—CONTRACT —CERTAINTY OF DESCRIPTION.

The description of the land in a contract sought to be specifically enforced is sufficient, where from it the tract can be identified.

[Ed. Note.—For other cases, see Specific Performance, Cent. Dig. §§ 356–370, 372; Dec. Dig. ⊚⇒114.]

7. SPECIFIC PERFORMANCE ⊚⇒116¾—GENERAL DEMURRER—OBJECTIONS REACHED.

The petition for specific performance of a contract for conveyance of two tracts is not subject to general demurrer, because the description of one only of the tracts is insufficient.

[Ed. Note.—For other cases, see Specific Performance, Cent. Dig. § 376; Dec. Dig. ⊚⇒ 116¾.]

Appeal from District Court, Mitchell County; W. W. Beall, Judge.

Action by H. O. Wooten and another against the Dermott Town-Site Company and others. Judgment for defendants, and plaintiffs appeal. Reversed and remanded.

Younge & Younge, and Royall G. Smith, of Colorado, Tex., for appellants. Shepherd & Sandusky, of Colorado, Tex., and M. Carter, of Colorado, Tex., for appellees.

CONNER, C. J. H. O. Wooten and the Roscoe, Snyder & Pacific Railway Company sued L. E. Lassiter and R. H. Looney, doing business under the firm name of Dermott Town-Site Company, for the specific performance of a contract for the conveyance of land, and in the alternative for a judgment upon the bond given by the Dermott Town-Site Company in the sum of $2,000 to secure the performance of the contract. The defendants, among other pleas, urged a general demurrer to the plaintiffs' petition, which, after a hearing, was sustained by the court, and, plaintiffs having declined to amend, the suit was dismissed. From the judgment of dismissal the plaintiffs have appealed, and assign error to the action of the court in sustaining the general demurrer.

The contract declared upon was attached as an exhibit to the plaintiffs' petition, and provided, in substance, that the Dermott Town-Site Company would "donate" to the railway company "a strip of land along the right of way of said Roscoe, Snyder & Pacific Railway Company 2,000 feet long and sufficient in width to make 300 feet wide, including the present Roscoe, Snyder & Pacific Railway right of way 100 feet wide, said strip of land to be taken from each side of said road as the party of the first part may elect." The contract further provided that the town-site company would "convey to H. O. Wooten 150 acres of land lying along the south side of the right of way of the Roscoe,

Snyder & Pacific Railway above described and its east line extending along the east side of said section 398, which is in block 97, Houston & Texas Central Railway Company survey to the south line of same, and said tract of land shall extend sufficiently far westward along the south line of said section and the south line of the above-said right of way to a sufficient distance to include 150 acres, the west line of said tract being parallel with the east line of said section." It was alleged that the agreed conveyance to H. O. Wooten was for the benefit and use of the railway company, and that the section of land intended to be designated was section 399, instead of section 398, as mistakenly entered. The contract recited that the town-site company held the section of which the above-described 150 acres was a part subject to a lien in favor of one John W. Mooar for purchase money, and it was provided that to secure the performance of the agreement to convey to the said H. O. Wooten said 150 acres of land the town-site company would execute a bond in the sum of $2,000. In consideration of all which the railway company agreed to construct sidings and such switches as should be necessary to transact its business for the accommodation of the traffic of the town site and adjacent country, and to erect and construct suitable stock pens and a depot building at a point on the line of said railway adjacent to the town site of Dermott, and at a point to be mutually agreed upon by the parties. The bond provided for in the contract was executed by the town-site company simultaneously with the execution of the contract. The bond was made payable to H. O. Wooten in the sum of $2,000 conditioned upon the discharge of the said lien in favor of Mooar within a period of two years from the date of the bond. It was alleged that the railway company had performed its part of the contract by locating its switches, stock pens, and depot at the designated point adjacent to the Dermott town site, and the plaintiffs prayed for a correction of the contract and for a specific performance.

It was further alleged, with a view of obtaining alternative relief, that in fact at the time of the making of the contract the Dermott Town-site Company did not own the land it had so contracted to convey to the plaintiffs, but that, on the contrary, the title was in said John W. Mooar, who had contracted to sell the section of land named, together with several other sections, to the town-site company, and, pursuant to the terms of the contract between those parties, the said John W. Mooar had deposited a deed in escrow, but that, the town-site company having failed to perform the conditions of the sale, the deed was never delivered, but, on the contrary, was withdrawn by the said John W. Mooar, and the contract under which the town-site company claimed entirely

canceled. Wherefore it was alleged that the town-site company now was wholly unable to perform the contract to convey the lands to the plaintiffs, and the prayer was that, should the facts be so found, the plaintiffs have judgment upon the bond against the defendants for their damages. There were numerous other allegations, but we think such as are material to a disposition of the appeal have been substantially above stated.

[1, 2] The contention below and before this court in aid of the demurrer is that the contract in question manifests a purpose to convey to H. O. Wooten for the use and benefit of the railway company land for purely speculative purposes, and that under the laws of Texas a railway company may not lawfully hold or receive donations of real estate "unless the same is to aid in the construction and use of its railway, or else for the purpose of collecting some debt due such company," citing in aid of the contention so stated the following authorities: Article 6537, 6538, Vernon's Sayles' Civil Stat.; Case v. Kelly, 133 U. S. 21, 10 Sup. Ct. 216, 33 L. Ed. 513; House of Mercy of N. Y. v. Davidson, 90 Tex. 529, 39 S. W. 924; Scott v. Bank, 66 S. W. 485.

Assuming, as we should perhaps do (Edwards Co. v. Jennings, 89 Tex. 618, 35 S. W. 1053), that if the contract is invalid, as appellees insist, there can be no recovery upon the bond, we will proceed to a determination of the proposition presented in the above contention, which it is conceded embodies the controlling question in the case.

We wish to observe, first, that in the case of Case v. Kelly, cited by appellee, the decree of the United States Supreme Court declaring a donation to a railway company invalid was predicated upon statutes of Wisconsin prohibiting such donations. And in the case of House of Mercy v. Davidson, supra, by the Supreme Court of this state, a donation to the appellant in that case, which was a corporation, was declared invalid upon the ground that the charter of the corporation prohibited its taking and holding property beyond a certain value, and that at the time of the donation there under consideration the corporation already owned property of the prescribed value. What was said by Mr. Justice Key of the Austin Court of Appeals relating to the subject under consideration in the case of Scott v. Bank, 66 S. W. 485, was based upon limitations of the statutes relating to the powers of private corporations generally, and not to those which, as we think, must govern in the case before us. What, then, must be said of the contemplated donation under consideration? Does it affirmatively appear from the face of the plaintiffs' petition that, as agreed upon, it was invalid? Says Mr. Elliott in volume 1, § 545, of his work on Contracts:

"As a general rule, corporations have the capacity and the implied power to take and hold real property the same as individuals, except only so far as they may be restricted by the objects of their creation and the limitations of their charter"—citing numerous cases, including the case of Russell v. T. & P. Ry. Co., 68 Tex. 646, 5 S. W. 686.

The plaintiffs alleged in their petition that the Roscoe, Snyder & Pacific Railway Company was a railroad corporation duly chartered under the laws of the state of Texas. Its powers and limitations, therefore, are controlled by title 115 of our Revised Statutes, relating to the incorporation of railroad companies, and not by title 25, relating to private corporations generally. Article 6537 of chapter 9, tit. 115, Revised Statutes 1911, provides that:

"Any railroad company shall have the right to purchase, hold and use all such real estate and other property as may be necessary for the construction and use of its railway and the stations and other accommodations necessary to accomplish the objects of its incorporation, and to convey the same when no longer required for the use of such railway."

Article 6538 of the same chapter reads:

"Such corporations shall have the right to take, hold and use such voluntary grants of real estate and other property as shall be made to it in aid of the construction and use of its railway, and to convey the same when no longer required for the uses of such railway, in any manner not incompatible with the terms of the original grant."

The next article (6539) so far as pertinent, provides that:

"All lands purchased by or donated to a railroad corporation, except such as are used for depot purposes, reservations for the establishment of machine shops, turnouts and switches, shall be alienated and disposed of by said company in the same manner and time as is required when lands have been received from the state."

In articles 5439 to 5441, inclusive, of chapter 9, tit. 79, relating to public lands, it is provided, in effect, that any railroad company owning, operating, or constructing a line of railways in this state, who may desire to purchase any portion of the public free school, university, or asylum lands, may do so under the regulation in the article prescribed for the location and establishment thereon "of town sites, depots, stations, yards, divisional terminals, shops, roundhouses, or water stations." It is provided in the articles referred to that all lands required for town-site purposes shall be in good faith placed upon the market for sale, and the title alienated within the term of ten years, and that land desired for a water station or reservoir for the impounding of rainwater for the use and operation of said railway must be within three miles of the line of road, and at least eight miles distant from any other tract sold to the same railway company for the same purpose.

We find no express inhibition in any of our statutes against the donation of lands to a railway company, and no statutes from which such inhibition may be implied, unless it be the statutes cited and quoted. As we have seen, express power has been given to railroad companies of this state to purchase

and to hold all such real estate as may be necessary for the construction and use of the railway and the stations and other accommodations necessary to accomplish the objects of its incorporation, and to receive such voluntary grants of real estate as shall be made to such railroad corporations in aid of the construction and use of the railway. Possibly the terms "in aid of the construction and use of its railway," as used in article 6538, above, should not receive a construction so broad as to authorize a donation of lands to be held by railway companies for purely speculative purposes, subject only to the requirement relating to alienation. But nothing in the public history of land grants to railways in this state would seem to prohibit such a construction as a matter of public policy, for it is a part of the general history of Texas that large quantities of land have been granted to the Texas & Pacific Railway Company and other railway companies to aid in the construction of their lines of railway that were not necessary for depot, sidings, water stations, or other purpose of actual construction, and that these lands have been long held not subject even to the requirement of alienation within specified periods. The aid in contemplation thus received must have been such aid as was received by the sale of such lands and the application of the proceeds in furtherance of the company's purposes. But, however this may be, there is nothing on the face of the plaintiffs' petition which affirmatively shows that the land which the Dermott Town-Site Company agreed to convey was not intended by the railway company for the purpose of a town site or water reservoir, or for some other use falling within the express grants of power given in the statutes already quoted. In this connection it may be useful to note that in the case of Wooters v. I. & G. N. R. R. Co., 54 Tex. 294, a voluntary subscription contract to pay $1,000 to secure the location of a depot was enforced against the subscribers. In the case of Texas & St. L. R. R. Co. v. Robards, 60 Tex. 545, 48 Am. Rep. 268, a contract to erect and perpetually maintain both passenger and freight depots at a designated place was upheld against the railway company, which pleaded, among other things, that the agreement as to the company was ultra vires. So also as of like effect are the cases of M., K. & T. Ry. Co. of Texas v. Doss (by this court) 36 S. W. 497; C., T. & M. C. R. R. Co. v. Titterington, 84 Tex. 218, 19 S. W. 472, 31 Am. St. Rep. 39; Herzog v. A., T. & S. F. Ry. Co., 153 Cal. 496, 95 Pac. 898, 17 L. R. A. (N. S.) 428. In none of these decisions is it suggested that such contracts are violative of any statute or against public policy, but all proceed upon the theory that, in the absence of prohibitory statutes or charters, such contracts are lawful. The case last cited, which was by the Supreme Court of California, was an action for the specific performance of a contract on the part of a railway company to establish a station and trains at a given place, and, while the action of the trial court in sustaining a demurrer to the petition was approved because of defects pointed out, the general right to a specific performance of the contract was clearly recognized.

[3-5] If the remedy of specific performance is available at all, it is available alike to either party to the contract under the same circumstances, that is, in favor of either party who has, as here alleged, performed his part of the contract, and the other party refuses to do so. As stated, it is here alleged that appellant has fully performed its part of the contract, and on demurrer this allegation must be accepted as true. Under like circumstances in this respect it was held in Railway v. Robards, supra, that the railway company could not avoid compliance with the contract on the ground that it was invalid for want of joinder of the wife. So in Ray v. Foster, 53 S. W. 54, by the Court of Civil Appeals for the Third Judicial District, it was said, inter alia:

"It is well settled in this state that the capacity of corporations to take title to real estate can only be raised and questioned by the state"—citing Schwab Clothing Co. v. Claunch, 29 S. W. 923, by this court.

In this respect and for the purposes of the present determination, it can make no material difference, as it seems to us, that in the cases last mentioned the title to the lands in controversy had already vested in the corporation by formal conveyance, for, as alleged, appellees have induced full performance of the contract on the part of appellant company at considerable cost, and thus secured what was doubtless considered by them as of large advantage and of great pecuniary benefit in the development and disposition of the town-site property, and upon the plainest principles of justice it would seem that an anxious ear should not be extended toward appellee's plea of a want of capacity on the part of the railway company to take and to hold the promised consideration.

[6, 7] Appellees further insist that the contract under consideration is not enforceable for want of a sufficient description of the lands to be conveyed. While, as presented in the present record, the objection is apparently well taken as to the strip 2,000 feet long on either side of the right of way, yet, reading the contract and bond together, the description of the 150 acres of land to be conveyed to H. O. Wooten is sufficient, as was, in effect, admitted on the submission of this cause, for it seems fairly plain that, reading the description of this tract of land as given in the bond and contract, enough is stated to identify the particular tract intended to be conveyed, and this is all that is required according to that legal maxim, "Id certum est quod certum reddi potest." The objection here noted not being good as a

whole, the general demurrer should not have been sustained.

It follows from what we have said that the judgment of the court must be reversed, and the cause remanded.