NATIONAL CITY BANK OF CLEVELAND, EXR. ET, PLAINTIFFS, *v.* BALDWIN ET, DEFENDANTS.

Probate Court, Cuyahoga County.

No. 615745. Decided August 17, 1962.

230

*Messrs. Hadley & Auble*, for plaintiffs.
*Messrs. Hadley & Auble*, for defendant, The National City

Bank of Cleveland and The Indiana Yearly Meeting of the Religious Society of Friends.

*Mr. Paul B. Roesch,* for defendant, Dorothy Anderson Thiel, an incompetent, as her Trustee.

ANDREWS, Chief Referee. On July 27, 1959, Lillian Baldwin entered into a living trust agreement with The National City Bank of Cleveland. Under this agreement the grantor reserved the net income to herself, and authorized the trustee, upon the death of the grantor, to pay part of the principal to the executor of her will, for the purpose of satisfying debts, expenses, and taxes of the estate.

Item III, paragraph 2 of the trust agreement provides that after the above-mentioned payments to the executor,

\* \* \* the Trustee shall distribute the then remaining trust property to THE INDIANA YEARLY MEETING (Quaker Hill, Chester Blvd., Richmond, Indiana), or its successor, in memory of two pioneer Quaker families, the Morrows and the Baldwins.

On July 27, 1959, Lillian Baldwin also executed her last will, in which, after a number of bequests to individuals, she left her residuary estate, personal and real, to the same institution designated in her trust agreement, namely, the Indiana Yearly Meeting, the complete corporate name of which is Indiana Yearly Meeting of the Religious Society of Friends. For simplicity I will refer to this institution as "the Society."

Lillian Baldwin died testate on September 11, 1960, and her will was admitted to probate on October 19, 1960.

The present action for a declaratory judgment, under Section 2721.05, Revised Code, is brought by The National City Bank of Cleveland as executor of Lillian Baldwin's will, and the Society as residuary legatee under the will. Defendants are the relatives of the deceased; The National City Bank as trustee under Lillian Baldwin's trust agreement; and the Society as beneficiary under the trust agreement.

The action seeks a determination by the court of the capa-

city of the Society to receive and hold any amount in excess of $20,000.00, distributable to it as beneficiary under decedent's trust agreement, which capacity or lack of capacity, it is alleged, will affect the assets constituting the residuary estate under decedent's will; and of the capacity of the Society, as residuary legatee under the will, to receive and hold such residuary estate.

Answers were filed by The National City Bank as trustee of the Lillian Baldwin Trust, and by the Society.

In its answer, the Bank avers that the Society has capacity to receive and hold the gifts in its favor contained in the will and in the trust agreement, and that the Bank, as executor of the will, would be acting within its duties as executor in making distribution according to the terms of the will. The Bank seeks instructions from the court looking toward the carrying out of the trust agreement, and the determination of all questions involved.

The Society avers that it has capacity to receive and hold the gifts made in the will and in the trust, and that the Bank would be acting within its duties as executor and trustee, respectively, in making distribution in accordance with the will and trust agreement. The prayer is framed accordingly, with the added request that the court declare that the residuary estate of the decedent does not include the assets constituting the corpus or income of the trust; that the Society is entitled to distribution as soon as practicable; and that the Bank be instructed to act in accordance with the declaration of law.

An answer was also filed by Mr. Paul B. Roesch, appointed trustee for an incompetent defendant, asking that her rights be protected. The other defendants did not plead.

A stipulation of facts was entered into by Messrs. Hadley and Auble, counsel for both the Bank and the Society, and Mr. Roesch for the incompetent. The facts stated in this opinion are based upon the stipulation as implemented by the opinion of the Attorney General of Indiana, hereinafter referred to.

I. *JURISDICTION OF THE SUBJECT MATTER*

Although in paragraph 14 of the stipulation, counsel agree that the court has jurisdiction of the subject matter, it seems advisable to spell this out before proceeding to the merits. As stated in Borchard, *Declaratory Judgments*, 233 (2d ed., 1941):

\* \* \* the court may *sua sponte* raise the question of its jurisdiction over subject matter, and consent of the parties cannot confer it.

Were this an action relating merely to the capacity of a beneficiary to take under a will, the Probate Court would undoubtedly have jurisdiction. But here, as part of the action, we are asked to make a declaration about the capacity of a beneficiary to take under a trust inter vivos.

If the action involved *only* a trust inter vivos, and the plaintiff were the trustee, the Probate Court would not have jurisdiction, for although Section 2101.24 (M), Revised Code, grants to the Probate Court jurisdiction to "direct and control the conduct of fiduciaries and settle their accounts," Section 2109.01, Revised Code, limits "fiduciary," as used in the Probate Code, to persons, associations, or corporations appointed by and accountable to the Probate Court.

Moreover, Section 2101.24 (D), Revised Code, gives the Probate Court jurisdiction to direct and control the conduct of *testamentary* trustees and settle their accounts. The limitation is significant.

Furthermore, the history of Section 2721.05, Revised Code, under which the present action is brought, reveals that "fiduciaries" in declaratory judgment actions in the Probate Court are limited to those appointed by and accountable to the Probate Court. See former Section 10505-2, General Code, a part of the Probate Code, effective January 1, 1932, and found in 114 Ohio Laws 320 *et seq.*

It is true that Section 10505-2, General Code, was repealed in 1933 (115 Ohio Laws, 497, Sec. 17) because of the passage of the Uniform Declaratory Judgments Act (Sections 12102-1, *et seq.*, General Code), which extended to *all* courts of record the power to render declaratory judgments; but Section 12102-1, General Code, granting the power, contained the phrase "within their respective jurisdictions," thereby showing very plainly a legislative intent not to enlarge the jurisdiction of courts over subject matter. Although the phrase "within their respective jurisdictions" has since been dropped from the statute (See Section 2721.02, Revised Code), there is no reason to suppose that this was done for the purpose of enlarging jurisdiction. More probably, the words were merely considered surplusage.

In any event, this action is brought by the executor and by a legatee under the will, and they seek a determination of the capacity of a beneficiary to take under the will as well as under the trust.

Section 2101.24 (C), Revised Code, gives the Probate Court jurisdiction to "direct and control the conduct and settle the accounts of executors and administrators and order the distribution of estates," and subsection (L) gives the Probate Court jurisdiction to render declaratory judgments.

As pointed out above, this power to render declaratory judgments does not, of itself, increase the jurisdiction of the Probate Court. Borchard, *Declaratory Judgments*, 237 (2d ed., 1941); *Sherrets* v. *Tuscarawas Savings & Loan Co.*, 78 Ohio App., 307, 70 N. E. (2d), 127 (1945). But the jurisdiction of the Probate Court with reference to declaratory judgments antedates the adoption of the Uniform Declaratory Judgments Act in Ohio and goes back to the Probate Code of 1932 (114 Ohio Laws, 320).

Section 2721.05, Revised Code, by virtue of which, as already stated, this action is brought, reads in part as follows:

Any person interested as * * * executor * * * legatee * * * in the administration of * * * the estate of a decedent * * *, may have a declaration of rights or legal relations in respect thereto in any of the following cases:

(B) To direct the executors * * * to do * * * any particular act in their fiduciary capacity;

(C) To determine any question arising in the administration of the estate.

Although this section is a part of the Uniform Declaratory Judgments Act, its ancestor, Section 10505-2, General Code, was, as I have mentioned, a part of the Probate Code of 1932, and gave to any fiduciary appointed by and accountable to the Probate Court, or "any * * * legatee * * * of the estate of a decedent * * *," the right to have a declaratory judgment for the same purposes as those quoted above from Section 2721.05, Revised Code. The right to grant such declaratory judgments was given specifically to probate courts alone, and this fact has been characterized as "significant" by the Supreme Court of Ohio in considering the extent of the Probate Court's jurisdic-

tion. *Radaszewski* v. *Keating*, 141 Ohio St., 489, 49 N. E. (2d), 167 (1943).

As previously indicated, by the repeal of the declaratory judgments sections of the Probate Code and the adoption of the Uniform Declaratory Judgments Act, the legislature extended the power to grant declaratory judgments to all courts of record within their respective jurisdictions (Section 12102-1, General Code), and there is not the slightest reason to suppose that the legislature, by so doing, intended to take away from the Probate Court the jurisdiction which that court possessed under the old Section 10505-2, General Code.

Section 2101.24 (L), Revised Code, giving the Probate Court jurisdiction to render declaratory judgments, was formerly Section 10501-53 (12), General Code, a part of the Probate Code of 1932. Because Sections 10501-53 and 10505-2, General Code, were both contained in the Probate Code, both must be taken into consideration in determining the jurisdiction of the Probate Court, and it is erroneous to take the position, as some courts and lawyers have done, that the jurisdiction of the Probate Court to render declaratory judgments is limited to the list of subject matters enumerated in Section 10501-53, General Code, now Section 2101.24, Revised Code. This viewpoint completely overlooks the fact that Section 10505-2, General Code, was also a jurisdictional statute, specifically dealing with the Probate Court's jurisdiction to grant declaratory judgments—a jurisdiction not taken away by the Declaratory Judgments Act, and therefore inherent in Section 2721.05, Revised Code.

It is one thing to assert, correctly, that the Declaratory Judgments Act did not increase the jurisdiction of the Probate Court; it is quite a different matter, and completely illogical and incorrect, to couple that assertion with the *non sequitur* that jurisdiction of the Probate Court to render declaratory judgments is confined to the categorical list in Section 2101.24, Revised Code. Such an erroneous position would deprive the Probate Court of a jurisdiction which the legislature gave it in 1932 by Section 10505-2, General Code, and has never taken away.

We come then to the specific question whether the Probate Court has jurisdiction to render a declaratory judgment pass-

ing upon the capacity of the Society to receive and hold the gift under the trust as well as the bequest under the will.

Inasmuch as plaintiffs bring their action under Section 2721.05, Revised Code, which, as we have seen, implements Section 2101.24 (L), Revised Code (jurisdiction to render declaratory judgments), it is not necessary to decide whether the situation comes under Section 2101.24 (C), Revised Code, giving the Probate Court jurisdiction to direct and control the conduct and settle the accounts of executors and administrators and order the distribution of estates.

By Section 2721.05, Revised Code, the executor and legatee, who are the plaintiffs, may have a declaration of rights:

(C) To determine any question arising in the administration of the estate.

And by Section 2721.13, Revised Code, the provisions dealing with declaratory judgments "are remedial and shall be liberally construed."

Similarly, Section 1.11, Revised Code, provides:

Remedial laws and all proceedings under them shall be liberally construed in order to promote their object and assist the parties in obtaining justice.

The laws relating to the jurisdiction of the Probate Court in both the Probate Code and the Declaratory Judgments Act are undoubtedly remedial and therefore must be liberally construed, even though, as we have seen, the latter Act did not increase the basic jurisdiction of the Probate Court.

Under such a statutory construction, the questions here involved seem clearly to be questions "arising in the administration of the estate." If the gift in the inter vivos trust may properly be carried out, the property represented thereby will not become a part of the estate, whereas if, by reason of lack of capacity of the beneficiary to take, the inter vivos gift fails, the property represented thereby becomes part of the estate, to be dealt with in accordance with the terms of the will, or, if not effectively bequeathed or devised, as intestate property. Surely, Section 2721.05, Revised Code, gives the executor, who is administering the estate, the right to have an answer to this question from the Probate Court, under whose supervision the estate is being administered.

As previously noted, the executor undoubtedly has a right to a determination by the Probate Court with reference to the capacity of the Society to take under the will. And the question of capacity to take under the trust is exactly the same in this case as capacity to take under the will. How ridiculous, expensive, and inconvenient it would be for this court to decide capacity only with reference to the will, necessitating another action in another court to decide the same question under the trust.

In a note to the case of *In re Estate of Morrison*, to which case further reference will be made shortly, the author commended the Supreme Court of Ohio for facilitating the quick disposition of probate matters by keeping them in the Probate Court. 23 *University of Cincinnati Law Review*, 116 (1954). The comment is equally apropos here.

The "plenary power" provision of Section 2101.24, Revised Code, may also be invoked. It reads as follows:

The probate court shall have plenary power at law and in equity fully to dispose of any matter properly before the court, unless the power is expressly otherwise limited or denied by statute.

The "matter" of the Society's capacity to take under the will is "properly before the court." Inasmuch as that matter is inextricably interwoven with the capacity to take under the trust, the Probate Court has "plenary power" to dispose of the whole business. No other holding would represent the liberal construction required by law.

Instead of referring to a number of decisions of the Ohio Supreme Court evidencing a liberal approach to Probate Court jurisdiction, I am selecting the case which most closely approximates the issue in the case at bar, namely, *In re Estate of Morrison*, 159 Ohio St., 285, 112 N. E. (2d), 13 (1953). In that case a widow, during the administration of her husband's estate, brought an action for a declaratory judgment asking for a finding and judgment that a declaration of trust executed by the decedent during his lifetime, and purporting to dispose of corporate shares of stock, was invalid, and that the stock should be inventoried and appraised as an asset of the estate and its value considered in determining the rights of the widow. The

defendants demurred to the petition, one ground of the demurrer being that the Probate Court had no jurisdiction of the subject matter. The Supreme Court held that the Probate Court had jurisdiction. The syllabus is enlightening. It reads as follows:

By the Constitution and statutory enactments, the Probate Court is invested with the power and jurisdiction to adjudicate a matter relating to the title to and status of personal property, where, during the administration of a decedent's estate in such court, decedent's widow files her petition asking for a declaration that certain personal property is an asset of the estate and must be administered as such, as against the claim that such property was effectually disposed of by the decedent during his lifetime through a written declaration of trust.

In addition to Article IV, Section 8 of the Ohio Constitution, the court quoted Section 10501-53 (3) (12) (13), General Code, now Section 2101.24 (C) (L) (M), Revised Code, and also the provision in Section 10501-53, General Code, now Section 2101.24, Revised Code, giving the Probate Court "plenary power at law and in equity fully to dispose of any matter properly before the court."

The court also quoted two sections of the Declaratory Judgments Act, namely, Sections 12102-1 and 12102-4 (c), General Code, now Sections 2721.02 and 2721.05 (C), Revised Code.

The opinion continued:

The estate of the decedent is properly in the Probate Court for administration and settlement. Essentially involved in the controversy before us is a question as to the title to and the status of certain personal property—whether it properly belongs to the estate and should be administered as a part thereof or whether the decedent effectually disposed of such property during his lifetime through the declaration of trust.

This court has recognized that matters of this sort, involving the title and rights to property, which arise in the settlement of decedents' estates are initially within the jurisdiction of the Probate Court and are determinable by that tribunal. No sufficient reason appears to abandon that position.

It is important to note that even though the *Morrison case*, involved a determination by the Probate Court of the validity

or invalidity of a trust inter vivos, the Supreme Court nevertheless upheld the jurisdiction.

If a Probate Court, in connection with the administration of an estate, may decide whether or not an inter vivos trust is valid, it follows that such a court may decide whether a beneficiary of an inter vivos trust has capacity to take, where, as here, that question is interwoven with the administration of the estate. Both the *Morrison case*, and the applicable Ohio statutes, properly construed, lead unerringly to the conclusion that in the present case the Probate Court has jurisdiction of the subject matter, and I so hold.

## II. *CAPACITY OF THE SOCIETY TO TAKE*

By paragraph 15 of the stipulation of facts, counsel agree that the law of Indiana governs the question of the Society's capacity to receive and hold the gifts under the will and trust agreement. Even without this stipulation, I would hold that the law of Indiana governs, since Indiana is the state of incorporation, and therefore the creator of the corporation's powers. See *Starkweather* v. *American Bible Society,* 72 Ill., 50 (1874); *House of Mercy* v. *Davidson,* 90 Tex., 529, 39 S. W., 924 (1897); *Restatement, Conflict of Laws,* Section 306, Comment *b* (1934).

Item V, paragraph 1, of the trust agreement specifies that the agreement ''shall be governed by the laws of Ohio in determining its validity, interpretation, administration and duration.'' Assuming, but not deciding, that the language used is broad enough to include the capacity of the Society to receive the gifts, the parties to the agreement lack the power to take away from the State of Indiana its right to determine the capacity of its own corporation to take and hold the gifts. We may, therefore, disregard this trust provision.

It will be recalled that by the trust agreement Lillian Baldwin gave to the Society the property remaining in the trust after certain payments, and that by her will she gave her residuary estate to the Society.

The Society was incorporated by the Indiana Acts of 1850, Chapter 269. Section 1 of the Act gave the corporation the right to receive and hold property by devise, gift, or otherwise ''(not, however, exceeding the annual net value of twenty thousand dollars).''

Counsel have stipulated that the assets in the trust estate available for distribution to the Society are in excess of $20,-000.00, and that the assets constituting the residuary estate under the decedent's will and available for distribution to the Society will be in excess of $20,000.00 if the assets now in the trust pass eventually by the will as part of the residuary estate.

Under the original Act of incorporation, therefore, the gifts would be excessive.

But receiving or holding property by a corporation contrary to its corporate powers or beyond the amount designated by charter or statute may be attacked only by the State, according to the majority rule. *Jones* v. *Habersham*, 107 U. S., 174 (1882); *Brigham* v. *Peter Bent Brigham Hospital*, 134 Fed., 513 (1904); *Hamsher* v. *Hamsher*, 132 Ill., 273, 23 N. E., 1123 (1890); *Farrington* v. *Putnam*, 90 Me., 405, 37 Atl., 652 (1897); *Hanson* v. *Little Sisters of the Poor*, 79 Md., 434, 32 Atl., 1052 (1894); *Hubbard* v. *Worcester Art Museum*, 194 Mass., 280, 80 N. E., 490 (1907); 2 *Beale, Conflict of Laws*, Section 167.14 (1935); 2 *Bogert, Trusts*, Section 327 (2d ed., 1953).

As said by Mr. Beale, *supra*:

In short, an express provision in the charter of a corporation against holding land or other property does not affect the power of the corporation to take, but only its right to take as between itself and the State of charter. A deed of land to a corporation under such circumstances is not void; and though the act of the corporation is wrong, the wrong is not to any individual, but to the State, and the State alone can object.

If this is true where the corporation is absolutely forbidden to take property, *a fortiori* when the prohibition is only partial the State of charter alone can enforce it.

There is a minority view that gifts, legacies, and devises to charitable and similar institutions in excess of charter limitations are void and may be attacked by the heirs and next of kin. *In re McGraw's Estate*, 111 N. Y., 66, 19 N. E., 233 (1888); *Phoenix* v. *Trustees of Columbia College*, 87 App. Div., 438, 84 N. Y. S., 897 (1903); *Trustees of Davidson College* v. *Chambers*, 56 N. C., 253 (1857); *Wood* v. *Hammond*, 16 R. I., 98, 17 Atl., 324 (1889). It has been said that whether the heirs may attack such excessive gifts depends upon the interpretation of

the statute. *Restatement, Trusts* (2d), Section 362, Comment *d* (1959) ; 4 *Scott, Trusts,* Section 362.4 (2d ed., 1956).

Indiana appears to come within the spirit of the majority view, although, as stipulated, there were no decided cases of courts of record on September 11, 1960, which were "direct precedent" with respect to the capacity of the Society (a charitable corporation) to take and hold the gifts. However, there are Indiana cases to the effect that if a corporation is holding property *ultra vires*, only the State may inquire into the validity of such corporate act. *Hayward* v. *Davidson,* 41 Ind., 212 (1872) ; *Board of Commissioners of Henry County* v. *Slatter,* 52 Ind., 171 (1875) ; *Pilliod* v. *Angola Ry. & Power Co.,* 46 Ind. App., 719, 91 N. E., 829 (1910). Since Indiana so holds for non-charitable corporations, there is every reason to believe that she would follow the same, and majority, rule as to charitable corporations, which are regarded with favor by the Indiana courts. Note, for example, the following language from *Herron* v. *Stanton,* 79 Ind. App., 683, 691-692, 147 N. E., 305, 308 (1920) :

\* \* \* legacies and devises to the uses of charity are entitled to peculiar favor, and are regarded as privileged testaments, and will not be declared void if they can, by any possibility consistent with the law, be held valid.

And see *Cruse* v. *Axtell,* 50 Ind., 49 (1875), where the court went all out to uphold a charitable gift greater in amount than the corporate charter permitted, in a suit by the heirs to recover the property. However, the court found a way to uphold the gift without deciding the question with which we are concerned, namely, whether attack is limited to the State, although they might well have placed their decision on the latter point.

In the absence of direct Indiana authority on the capacity of the Society to take, counsel have stipulated that the law of Indiana with respect thereto "is set forth in the Opinion of the Attorney General of the State of Indiana (Opinions, Attorney General of Indiana, 1962, Opinion 34), attached hereto, marked 'Exhibit B,' and by this reference hereby made a part hereof."

Since foreign law is a question of fact, I see no reason why the parties may not stipulate with reference to it. The ex-

cellence of the Attorney General's opinion makes it unnecessary for me to decide what would happen if parties made a stipulation with reference to foreign law which was clearly erroneous.

I will not attempt to summarize the whole opinion of the Attorney General in one gulp, but will refer to it from time to time in connection with the points being discussed.

After speaking of the original Act incorporating the Society, and its background, the Attorney General points out that the legislature and the courts of Indiana many years ago·"established the rule that bequests, devises and gifts for charitable uses are to be highly favored" and "are to be construed by the most liberal rules that the nature of the case will permit." He supports his statement by reference to and quotation from case law, and says that this rule must be considered in connection with pertinent statutory construction.

He discusses 13 American Jurisprudence, *Corporations*, Section 782, entitled "Collateral Attack on Devise to Corporation because of Incapacity to Take," which recognizes the majority and minority rules previously referred to in this opinion, but he concludes that because the property in question is under the jurisdiction of the Ohio courts, it is for them to determine whether any persons other than the State of Indiana may question the right of the Society to accept the bequest. And the stipulation entered into by counsel also states that the law of Ohio will control the validity of the gifts, as against the next of kin and the heirs.

Fortunately, it is unnecessary to decide this exceedingly difficult conflict of laws question; difficult because, after all, the statute under construction is an Indiana statute, whereas, undoubtedly, Ohio has the power to determine whether the gift is valid or void. If the Indiana case law adopted the minority view that incapacity to receive a gift may be raised by the heirs, might not Ohio, presented with a choice-of-law problem, follow the Indiana cases, on the traditional theory that, in a choice-of-law setting, the interpretation of the Indiana statute is considered as part of the statute, assuming, of course, that the Indiana law is not contrary to the public policy of Ohio?

By the same token, if the Indiana courts adopted the majority rule (which I think they would do), interpreting the

Indiana statute as permitting an attack by the State alone, would not Ohio follow the Indiana interpretation unless contrary to Ohio public policy?

I know of no law or policy in Ohio prohibiting a gift or bequest of the kind here involved to a foreign charitable corporation capable by the law of the state of incorporation to accept it, nor has any such Ohio law or policy been brought to my attention by counsel. Moreover, none of the interested parties are contesting either the gift under the trust or the bequest under the will. Consequently, the answer turns solely upon whether Indiana will permit the Society to receive and hold these gifts.

Fortunately again, circumstances arising since the original incorporation of the Society eliminate the necessity for a decision on its capacity to take, based upon the original Act containing the $20,00.00 annual limitation.

The first of the circumstances referred to in the preceding paragraph consists of the fact that over a long period of time, the Society, with the knowledge of the proper state authorities and without objection by them, has been receiving gifts far in excess of the $20,000.00 a year limitation. Commenting upon this fact, the Attorney General said, in his opinion:

These facts are conclusive evidence that, although the State authorities have known the amount of such yearly receipts, they have never questioned the right of this organization to receive such sums for the purposes and uses authorized.

Such conduct has been held to constitute a waiver by the State of the violation of the charter provision. *Farrington* v. *Putnam*, 90 Me., 405, 37 Atl., 652 (1897).

Even more important is the next circumstance which has arisen since the original incorporation of the Society.

On July 19, 1961, the Society reincorporated under an Act of 1943, cited in the Attorney General's opinion, and in so doing adopted articles of incorporation which do not contain the limiting phrase ''(not, however, exceeding the annual net value of twenty thousand dollars),'' or any other limitation upon the amount which may be held. Such legislation, even after the death of the testator, is effective to nullify the prior limitation. 4 *Scott, Trusts*, Section 362.4 (2d ed., 1956; *Restatement, Trusts 2d*, Section 362, Comment *d* (1959); *Hubbard* v. *Worcester Act*

*Museum*, 194 Mass., 280, 80 N. E., 490 (1907). At least this is true where the rights of heirs and next of kin are not affected, and we have already seen that Ohio will interfere on behalf of heirs and next of kin, and that they are not contesting the gifts anyhow.

The curative legislation is said by the Attorney General to be intended unquestionably to operate not only prospectively, "but to act in such a manner as to remedy and overcome limitations upon the powers of corporations previously incorporated which choose to become reincorporated under the Acts of 1943, Ch. 108, *supra*. * * * Such statutes operate not only to suppdy a need for authority prospectively, but also to supply that need with respect to present problems, and have even been construed to have a retroactive effect, so as to cure all defects and remove all doubts with respect to the question of the authority which the remedial or curative statute supplies."

Further, the Attorney General states, referring to both the reincorporation and the known receipt by the Society of excessive amounts over the years:

* * * it can be stated, without any equivocation, that the State of Indiana recognizes the right of the Indiana Yearly Meeting of Friends to receive these trust funds. The liberal construction given to remedial or curative statutes, whereby they are given effect with relation to existing problems and even given retroactive effect, conclusively supports the right of this organization to receive these funds. Its reincorporation under the Act of 1943, Cr. 108, *supra*, results, unquestionably, in removing any prior existing incapacity to receive a gift in excess of the purported limitation imposed upon the Indiana Yearly Meeting of Friends by the Acts of 1850, Ch. 269, *supra*. Further, the fact that Indiana has known of this organization having received amounts in excess of the purported charter limitation for many years, without ever having challenged its rights to receive such amounts, is proof that Indiana will not now question the right of the Indiana Yearly Meeting of Friends to receive these funds and use them for the various religious, educational and charitable purposes to which the organization is dedicated.

Here is the conclusion of the Attorney General:

* * * it is my opinion that whatever limitation may have been imposed upon the Indiana Yearly Meeting of Friends by the Acts of 1850, Ch. 269, *supra,* if any, has long since become ineffectual and all doubt has been clearly erased by the reincorporation of this organization pursuant to the Acts of 1943, Ch. 108, *supra.* Moreover, such reincorporation has the effect of remedying and curing any and all defects which may have existed prior thereto, being effective not only prospectively, but with respect to present problems and retroactively, so as to legalize any and all gifts theretofore received in excess of the purported limitation contained in the original charter statute.

From the above, it is clear that under the law of Indiana the Society has capacity to receive and hold the gifts provided for it in the trust agreement and in the will, regardless of the amount of either or both, and that the State of Indiana will permit the Society to receive and hold these gifts.

## Conclusions of Law

1. The court has jurisdiction of the subject matter.

2. The law of Indiana governs the capacity of the Indiana Yearly Meeting of the Religious Society of Friends to receive and hold the gifts provided for it in the trust agreement and will of Lillian Baldwin.

3. By the law of Indiana, the Indiana Yearly Meeting of the Religious Society of Friends has capacity to receive and hold the gifts provided for it in the trust agreement and will of Lillian Baldwin, regardless of amount or value.

4. No law or policy of Ohio prevents the carrying out of the provisions of the trust agreement and of the will, in favor of the Indiana Yearly Meeting of the Society of Friends.

5. Inasmuch as the provisions in the trust agreement in favor of the Indiana Yearly Meeting of the Society of Friends are valid, and the beneficiary has the capacity to receive and hold the property represented thereby, such property, being distributable to the said beneficiary under the terms of the trust agreement, is no part of the estate of the decedent, Lillian Baldwin.

6. The National City Bank of Cleveland, as trustee under the trust agreement executed by and between it and Lillian Baldwin, has the authority and duty to make distribution to the

Indiana Yearly Meeting of the Society of Friends, in accordance with the terms of the trust agreement.

7. The National City Bank of Cleveland, as executor of the will of Lillian Baldwin, has the authority and duty to make distribution of the residuary estate of Lillian Baldwin to the Indiana Yearly Meeting of the Society of Friends, in accordance with the terms of the will.

Note: The words "gift" and "gifts" are used in a broad sense, so as to include a bequest or devise under the will, as well as the gift under the trust agreement.