Knowles, Exrx., *v.* Knowles et al.

[Cite as Knowles, Exrx., v. Knowles, 4 Ohio Misc. 153.]

(No. 671118—Decided August 3, 1965.)

Construction of Will: Probate Court of Cuyahoga County.

*Messrs. Ewing, Hecker & Myers,* for plaintiff.
*Mr. Joel M. Garver,* for guardian *ad litem.*

154

ANDREWS, Chief Referee. Plaintiff is the executrix of the will of George Knowles, deceased. The will was executed on January 16, 1962, and Mr. Knowles died on January 20, 1965. On January 26, 1965, the will was probated, and Mrs. Margaret K. Knowles, the widow, was appointed executrix. In addition to Mrs. Knowles, the next of kin are two minor children, Robert G. Knowles and Janet R. Knowles. Mr. Joel Garver has been appointed guardian ad litem for the minor children, and has filed an answer. No other answers have been filed. In addition to Margaret Knowles and the two children, the other defendants are Beverly Borgia Wolf, Miles H. Knowles, and Miles H. Knowles, trustee.

In her petition, plaintiff asks for an order construing the decedent's will in certain particulars, and for a declaratory judgment concerning several questions involved in the interpretation of the will and the distribution of the assets of the estate.

Question 1. "Has the bequest to Beverly Borgia Wolf in paragraph (c) of Item 1 of such will lapsed?"

That paragraph reads as follows:

"To Beverly Borgia, if she survives me and at the time of my death is still my secretary and provided my said net estate exceeds Ten Thousand Dollars ($10,000), the sum of Five Hundred Dollars ($500.00)."

The petition alleges that Beverly Borgia (now Beverly Borgia Wolf) was not employed as Mr. Knowles's secretary at the time of his death. No answer denying this allegation having been filed by Beverly Borgia Wolf, the allegation must be taken as true. Sections 2309.27 and 2101.32, Revised Code.

A testator has the unquestioned right to attach any condition to his gift which is not in violation of law or public policy. 56 Ohio Jurisprudence 2d, Wills, Section 722. This includes the condition that the legatee be in the testator's employ at the time of the testator's death. Atkinson, Wills, Section 149 (1st ed. 1937); 57 American Jurisprudence, Wills, Section 1394. The condition not having been met in the present case, the bequest lapses and becomes part of the residuary estate. 56 Ohio Jurisprudence 2d, Wills, Sections 867 and 868; 6 Bowe-Parker, Page, Wills, Section 50.16 (1962).

Question 2. "Was a good, valid and subsisting trust estab-

lished by the execution of the trust agreement under date of January 16, 1962?"

The trust agreement is attached to the petition as Exhibit B. By its terms, George Knowles, the decedent, enters into the trust agreement with his brother, Miles H. Knowles, as trustee.

Article 1 of the trust agreement is entitled "Creation of Trust," and reads as follows:

"I deliver and turn over to said trustee the property, more particularly identified as certain insurance policies upon my life listed in the Insurance Trust Schedule attached hereto and made a part hereof, together with any other property, real and personal, acceptable to the trustee, which may be added to and included by the donor in any schedule attached hereto and made a part hereof, to have and to hold in trust, nevertheless, for the uses and purposes set forth herein,"

The insurance trust schedule lists six policies having a total face value of $55,000.

Plaintiff states in her petition that the insurance policies were intended to constitute the *res* or corpus of the trust, but that the policies were not, during the lifetime of decedent, turned over or delivered to the trustee, and that the trust lacks any *res* or corpus.

At first blush, it may seem that this court has no jurisdiction to pass upon the validity or invalidity of the *inter vivos* trust. See Sections 2101.24 (D) and (M), and 2109.01, Revised Code (defining "fiduciary"). But the jurisdiction becomes clear upon consideration of Item II of the will. This gives and devises all the residue and remainder of the testator's property to his brother, Miles H. Knowles, trustee, "in augmentation of any property held by him under the terms of a certain trust agreement heretofore entered into between me and said trustee dated the 16th day of January, 1962."

The above provision is undoubtedly based upon the recent statute, Section 2107.63, Revised Code, which I quote:

"A testator may by will devise, bequeath, or appoint real or personal property, or any interest in such property, to a trustee of a trust which is evidenced by a written instrument executed by the testator * * * either before or on the same date of the execution of such will and which is identified in such will.

156

"The property or interest so devised, bequeathed, or appointed to such trustee shall be added to and become a part of the trust estate, shall be subject to the jurisdiction of the court having jurisdiction of such trust, and shall be administered in accordance with the terms and provisions of the instrument creating such trust, including, unless the will specifically provides otherwise, any amendments or modifications thereof made in writing before, concurrently with, or after the making of the will and prior to the death of the testator. The termination of such trust, or its entire revocation prior to the testator's death, shall invalidate such devise, bequest, or appointment to such trust.

"* * *

"This section applies to wills executed before October 5, 1961 as well as to wills executed thereafter."

By reason of Item II of the will, we are required to determine the disposition of the residue and remainder of Mr. Knowles's estate. This is undoubtedly a question "arising in the administration of the estate," within the meaning of Section 2721.05, Revised Code (part of the Uniform Declaratory Judgments Act), which permits executors and others to have a declaration of rights in the following case:

"* * *

"(C) To determine any question arising in the administration of the estate * * *"

In *National City Bank* v. *Baldwin*, 90 Ohio Law Abs. 228 (Prob. 1962), I showed from a study of the history of the statute that the Probate Court has jurisdiction in such cases. In fact, as there pointed out, the "ancestor" of the present statute was a part of the Probate Code of 1932. The Uniform Declaratory Judgments Act was clearly not intended to deprive the Probate Court of that jurisdiction.

The fact that in determining how to dispose of the residuary estate, a question arises concerning the validity of an *inter vivos* trust, does not take away the jurisdiction of the Probate Court. *Morrison* v. *Morrison* (1953), 159 Ohio St. 285 (upholding jurisdiction of Probate Court to decide whether or not *inter vivos* trust relating to shares of stock was valid; if not, the stock would be part of the estate). See 23 University of Cincinnati Law Review 116 (1954).

Our jurisdiction being established, we come, then, to the question asked: Was a good, valid, and subsisting trust established by the execution of the trust agreement?

To quote from 1 Restatement of Trusts 2d, Section 74 (1959): "A trust cannot be created unless there is trust property." See, also, 53 Ohio Jurisprudence 2d, Trusts, Section 42; *Ulmer* v. *Fulton* (1935), 129 Ohio St. 323, 339. And see 1 Restatement of Trusts 2d, Section 2, Comment *c*, explaining the difference between "property" and "the subject matter of the trust."

Life insurance policies may be the subject matter of a trust. 53 Ohio Jurisprudence 2d, 486, Trusts, Section 42; Bogert, Trusts and Trustees (2d ed. 1964), Sections 235 to 239. As stated in 1 Restatement of Trusts 2d (1959), Section 54, Comment 1:

"The insurance trust itself is valid, although the trustee has no active duties to perform until the death of the insured, and although the insured person reserves power to change the beneficiary of the policy and power to revoke or modify the trust."

Section 1335.01 (B), Revised Code, provides as follows:

"(B) A trust is not invalid because the corpus thereof consists only of:

(1) The primary or contingent right to receive the proceeds of life insurance contracts * * * payable at death or by reason of death; or

(2) Assets having a nominal value. * * *"

In the present case all the policies named the decedent's wife as the primary beneficiary, and the proceeds have been paid to her. There was no designation of the trustee as a contingent beneficiary. Clearly, there was no trust corpus, and it is unnecessary to determine whether the mere nondelivery of the policies to the trustee would, in itself, prevent the establishment of a valid trust, as suggested in the petition. As a matter of fact, Article II, section 1 (b) of the trust agreement provides that policies payable to the trustee as contingent beneficiary shall not be held by him.

It is evident that the testator intended to create a trust *inter vivos* in the insurance policies, but did not take the final steps necessary to do so.

In answer to the question, I hold, therefore, that no valid trust was established by the execution of the trust agreement. I hold, further, that no trust came into existence during the testator's life.

However, the presence of Section 2107.63, Revised Code, poses another question, not asked by plaintiff. In essence the question is whether Section 2107.63, Revised Code, is operative despite the lack of a corpus in the intended living trust during the testator's life.

It will be recalled that the section permits a testator to bequeath property "to a trustee of a trust which is evidenced by a written instrument executed by the testator * * * before or on the same date of the execution of such will and which is identified in such will."

The statute goes on to say that the property so bequeathed "shall be added to and become a part of the trust estate," and that it "shall be subject to the jurisdiction of the court having jurisdiction of such trust," and shall be administered in accordance with the terms of the trust instrument, including written amendments or modifications. The termination of the trust, or its entire revocation prior to the testator's death, invalidates the bequest.

Section 2107.63, Revised Code, is what is known as a "pour-over" statute. It validates additions to existing trusts, and incorporates in statutory form the doctrine of "facts of independent significance." Sater, Recent Legislation Affecting Ohio Probate Practice, 22 Ohio State Law Journal 721, 722 (1961); Munster, Survey of Ohio Law 1961—Trusts, 13 West. Res. L. Rev. at 540 (1962); Schwartz, Recent Legislation: Decedents' Estates—Indepedent Legal Significance and Pour-Over Wills, 13 Western Reserve Law Review 795 (1962).

As applied to a living trust, the doctrine means that a testamentary "pour-over," or addition, to the living trust will be valid and operative even as to modifications made after the execution of the will. The modifications need not conform to Section 2107.03, Revised Code (Method of making will), and no codicil is necessary. In other words, the trust has an "independent significance."

There is a large amount of law review material on the subject. I will not cite all of it. See, for example, Kajan, The

Pour-Over Trust, 13 Cleveland-Marshall Law Review 544 (1964); McClanahan, Bequests to an Existing Trust—Problems and Suggested Remedies, 47 California Law Review 267 (1959); Flickinger, The "Pour-Over" Trust and the Wills Statutes; Uneasy Bedfellows, 52 Kentucky Law Journal 731 (1964); Palmer, Testamentary Disposition to the Trustee of an Inter Vivos Trust, 50 Michigan Law Review 33 (1951); Polasky, "Pour-Over Wills": Use with Inter Vivos Trusts, 17 Southwestern Law Journal 410 (1963); Lauritzen, Pour-Over Wills, 95 Trusts and Estates 992 (1956). And see 1 Restatement of Trusts 2d, Section 54, Comments e through 1 (1959).

States having pour-over statutes are listed in the article previously cited, 13 Cleveland-Marshall Law Review 544, at page 553 (1964), and in 2 Bowe-Parker, Page, Wills, Section 19.27, p. 108 (1960). A uniform act, entitled "Uniform Testamentary Additions to Trusts Act," was approved in 1960 by the Conference of Commissioners on Uniform State Laws and the American Bar Association. It has been adopted in a number of states, sometimes with modifications. See 9C Uniform Laws Annotated (1964 Cum. Annual Pocket Part) 141-145.

The trust in the present case being ineffective for want of a trust *res*, may there nevertheless be a pour-over of the property bequeathed by the will to the trustee? Naturally, this depends upon the particular statute. For an analysis of a number of the statutes on whether there must be a trust *res* at the time of the testator's death, see Comment, 57 Michigan Law Review 81, 104-106 (1958). And as to whether there must be a trust *res* when the will is executed, see pages 93 et seq. of the same article.

The general principle is given in 1 Restatement of Trusts 2d, Section 54, Comment f (1959):

"If no property was included in the purported *inter vivos* trust, prior to the testator's death, the disposition by will cannot be upheld on the ground of resorting to facts of independent significance, since no trust in fact existed prior to the testator's death."

See also 1 Scott, Trusts, 378, Section 54.3 (2 Ed. 1956). It has been suggested that, contrary to the above principle, the Uniform Act does not require a *res* or corpus. See pp. 433 et seq. of the 17 Southwestern Law Journal article cited *supra*.

Section 2107.63, Revised Code, evidently requires that there be a corpus in existence at the time of the testator's death, to which the pour-over can be made. According to the statute, the property bequeathed to the trustee is to be "added to and become a part of the trust estate."

Webster's New Collegiate Dictionary (1961) defines the word "add" as "To join or unite so as to increase the number, augment the quantity, or enlarge the magnitude."

It is obvious that in the present case there is no existing trust estate or *res* which can be "added to." Item II of the will seems also to reflect the idea that there must be a *res* in existence, for it uses the words, "in augmentation of any property held by him" (the trustee) under the trust agreement.

I hold that the residue and remainder of the estate cannot be "poured over" to the intended living trust. In other words, the residuary estate cannot be distributed to Miles H. Knowles as trustee under the intended *inter vivos* trust, because, due to the lack of a trust *res*, there is no *inter vivos* trust in existence, as required by Section 2107.63, Revised Code.

By reason of my decision on the foregoing matters, the third question asked by plaintiff becomes moot and will be disregarded.

Question 4. "If a valid trust was not created by such trust agreement, did her decedent incorporate by reference the provisions of said trust agreement and by the provisions of Item II of his will establish a testamentary trust?"

The answer to this question is "yes." The pertinent part of Section 2107.05, Revised Code, reads as follows:

"An existing document, book, record, or memorandum may be incorporated in a will by reference, if referred to as being in existence at the time the will is executed. * * *"

In Item II of the will, after the language devising the residue to the trustee under the living trust, which devise I have held ineffective, the following language appears:

"It is not my intention to incorporate said Trust Agreement hereunder as a probate trust unless it is necessary so to do to prevent my property from being disposed of as intestate property * * *"

Although this is stated negatively, the meaning is clear. Inasmuch as the "pour-over" bequest to the living trust fails,

the residue would descend as intestate property in the absence of something to save it. The languge quoted immediately above, plus the explicit reference in Item II to the living trust agreement, does save it. In effect the testator is saying that he incorporates as part of his will the trust agreement entered into between him and Miles H. Knowles as trustee, dated January 16, 1962. The terms of the quoted portion of Section 2107.05, Revised Code, are clearly met by the incorporating language. See 2 Ohio State Law Journal 72, 73 (1935) (necessary to show intention to incorporate); 2 Bowe-Parker, Page, Wills, Section 19.32 (1960) (incorporated document treated as part of will).

A trust instrument is a "document" within the meaning of the statute. 55 Ohio Jurisprudence 2d 570, Wills, Section 108; *Bolles* v. *Toledo Trust Co., Exr.* (1944), 144 Ohio St. 195, 209.

Inasmuch as it is the *trust instrument*, not the trust, which is being incorporated, the absence of a trust *res* is immaterial. 2 Bowe-Parker, Page, Wills, 105-106, Section 19.27 (1960); Comment, 57 Michigan Law Review 81, 85 (1958); 1 Restatement of Trusts 2d, Section 54, Comment f (1959). And the fact that the trust agreement is subject to modification or revocation does not of itself, prevent its incorporation into the will. *Bolles* v. *Toledo Trust Co., Exr.* (1944), 144 Ohio St. 195 (paragraphs 4 and 5 of the syllabus); 1 Restatement of Trusts 2d, Section 54, Comment h (1959); 21 A. L. R. 2d 220 (1952). The Ohio law is discussed by Hobson, Testamentary Additions to Inter Vivos Trusts—The Present State of the Law in Ohio, 30 Cleveland Bar Association Journal 99 (Part 1), and 114 (Part 2, Hobson and Taylor) (1959).

Section 2107.63, Revised Code, the pour-over statute, did not repeal Section 2107.05, Revised Code, the incorporation statute, and both are in effect.

I hold that Item II of the will incorporates by reference the trust agreement between the testator and Miles H. Knowles, trustee, dated January 16, 1962, and that, by reason of such incorporation, the trust agreement becomes a part of the will as a testamentary trust.

Question 5. "If the answer to question 4 is in the affirmative, shall plaintiff pay over and distribute to the defendant, Miles H. Knowles, trustee, the residue and remainder of the property in the estate of her decedent pursuant to the provisions

of his will and of the trust agreement of January 16, 1962, as incorporated in such will?"

The answer to this question is "yes," subject, of course, to compliance with the provisions of law with respect to the appointment of trustees and the distribution of estate property by an executor.

Question 6 asks whether the court will require the defendant trustee to post bond or whether the court will relieve him of this duty as directed by the testator. This question is reserved for determination by the court.

Question 7 asks whether the residue and remainder pass and descend as intestate property under the statute of descent and distribution. In view of my decision with reference to questions 4 and 5, the answer to question 7 is "no."

Inasmuch as my conclusions of law have already been set forth in connection with the various questions raised, it is unnecessary to prolong this opinion by summarizing them at this point.

*Judgment accordingly.*